86 A.3d 182

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Richard Allen JOHNSON, Appellee.**

Supreme Court of Pennsylvania.

Submitted April 25, 2013.

Decided Feb. 18, 2014.

Frank P. Barletta, Esq., Luzerne County District Attorney's Office, Stefanie Joy Salavantis, Esq., for Commonwealth of Pennsylvania.

John Anthony Donovan, Jr., Esq., Caelie McCormick Sweigart, Esq., Luzerne County Public Defender's Office, Albert Joseph Flora, Jr., Esq., Basil G. Russin, Esq., Wilkes–Barre, William Ruzzo, Esq., Kingston, for Richard Allen Johnson.

Karl Baker, Esq., Ellen T. Greenlee, Esq., Peter Rosalsky, Esq., Defender Association of Philadelphia, for Defender Association of Philadelphia.

David Rudovsky, Esq., Philadelphia, Kairys, Rudovsky, Messing & Feinberg, Leonard Sosnov, Esq., Harrisburg, for PA Association of Criminal Defense Lawyers.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Chief Justice CASTILLE.*

This matter turns upon whether the Superior Court erred in affirming the trial court's suppression of physical evidence seized incident to an arrest based on an invalid (expired) arrest warrant, where the police officer reasonably and in good faith believed that the arrest warrant was valid. We hold that the evidence was properly suppressed under Article I, Section 8 of the Pennsylvania Constitution and this Court's decision in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) (rejecting federal good faith exception to exclusionary rule in case involving evidence seized pursuant to defective

* This matter was reassigned to this author.

search warrant). Accordingly, we affirm the Superior Court's order.

On March 8, 2010, appellee Richard Allen Johnson was a passenger in a vehicle in Wilkes–Barre which was stopped by State Trooper James Knott, who had previously received a radio communication that the vehicle in question had been involved in a drug transaction, and who then observed that the vehicle had a broken tail light. Upon requesting identification and processing appellee's name through his patrol car computer, Trooper Knott received a "hit" message advising that there was an active arrest warrant for appellee. Trooper Knott then placed appellee under arrest and conducted a pat-down search during which he discovered thirty-seven packets of suspected heroin, two cell phones and $1674.00 in cash. Trooper Knott placed appellee in the back of a police car and transported him to the police barracks, where he read appellee the *Miranda* warnings.[1] Appellee made several statements to Trooper Knott. In one statement, appellee indicated that he is a drug dealer and that the driver of the vehicle bought drugs from him. In a later statement, appellee claimed he is a user of drugs, not a seller, and that the cash he carried at the time of the arrest and patdown search was a tax refund.

Trooper Knott subsequently determined that the warrant notification he relied upon when he arrested appellee was no longer valid and should have been recalled, since it had previously been served on appellee nine days earlier, on February 27, 2010. Appellee was nonetheless charged with three violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780–113(a)(16), (a)(30) and (a)(32). Appellee moved to suppress the physical evidence recovered during the search incident to his arrest, as well as the incriminating statements he made to Trooper Knott. Appellee alleged that his underlying arrest was unlawful under both the Fourth Amendment of the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution. After a hearing and argument in the Court of Common Pleas of Luzerne

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

County, the court granted appellee's motion and ordered suppression of the evidence under Article I, Section 8. The court found as a fact that Trooper Knott had acted in good faith in arresting appellee on the basis of what Knott mistakenly believed was an active warrant, but the court reasoned that there is no good faith exception to the exclusionary rule under the Pennsylvania Constitution. *Id.* at 6 (citing *Edmunds* ). The court concluded that the physical evidence, as well as the statements obtained later at the police barracks, were the fruits of an illegal arrest based on an invalid warrant, and therefore must be suppressed. Tr. Ct. Opinion at 7 (citing *Commonwealth v. McFeely,* 509 Pa. 394, 502 A.2d 167 (1985) (listing factors to consider in determining whether connection between confession and warrantless arrest was so attenuated as to dissipate taint of illegal arrest)).

The Commonwealth filed an appeal to the Superior Court, certifying that the suppression court's order terminated or substantially handicapped the prosecution. *See* Pa.R.A.P. 311(d) (in criminal cases, Commonwealth may take appeal as of right from order that does not end entire case where Commonwealth certifies that order will terminate or substantially handicap prosecution). A Superior Court panel filed a short unpublished memorandum opinion affirming that part of the order which suppressed the physical evidence seized from appellee incident to arrest, but vacating that part of the order which suppressed appellee's statements, and remanding to the trial court for reconsideration of the exclusion of those statements under *Commonwealth v. Smith,* 606 Pa. 127, 995 A.2d 1143 (2010) (not all confessions or admissions secured from illegally arrested persons are *per se* inadmissible as trial evidence). In affirming the suppression of the physical evidence seized from appellee, the panel relied on a prior Superior Court decision, *Commonwealth v. Antoszyk,* 985 A.2d 975 (Pa.Super.2009), for the proposition that there is no "good faith exception" to the exclusionary rule under the Pennsylvania Constitution, and that contraband seized pursuant to an invalid warrant is properly suppressed.[2]

**2.** The Superior Court's decision in *Antoszyk* was affirmed by operation of law in a *per curiam* order, when this Court, with only six justices

The Commonwealth filed a petition for allowance of appeal, and this Court granted allocatur to consider the following question: "Whether the Superior Court erred in affirming the suppression of evidence seized incident to an arrest based on an invalid arrest warrant, where the police officer reasonably and in good faith believed that the warrant was valid?" *Commonwealth v. Johnson*, 616 Pa. 544, 51 A.3d 180 (2012). No issues related to the admissibility of appellee's post-arrest statements are before the Court in this appeal; the Superior Court decision controls that issue.

The Commonwealth argues that suppression of the physical evidence obtained as a result of appellee's arrest was an inappropriate remedy given the trooper's reasonable and proper reliance on the warrant. The Commonwealth relies on *Smith, supra,* where this Court held, *inter alia,* that although the defendant's arrest on an expired warrant was illegal, statements secured from him after *Miranda* warnings were issued were admissible, the Court noting that the police had acted on an administrative error rather than pursuant to an intent to improperly coerce a confession. The Commonwealth relies in part on the *Smith* Court's reference to the Fourth Amendment decision in *Herring v. United States,* 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), as further support for its position.[3] The Commonwealth argues that the reason-

participating, deadlocked 3–3. *Commonwealth v. Antoszyk,* 614 Pa. 539, 38 A.3d 816 (2012). Mr. Justice Eakin filed an opinion in support of reversal, which was joined by this author and Mr. Justice McCaffery. That opinion would have held, *inter alia,* that the case did not actually implicate the good faith exception, and that the Superior Court erred in applying it to affirm the suppression order.

**3.** In *Herring,* the U.S. Supreme Court held that the federal exclusionary rule did not necessarily apply to evidence seized pursuant to an expired arrest warrant; instead, the good faith exception to the exclusionary rule could apply, depending on the circumstances. Since the error in failing to purge the expired warrant in *Herring* was the result of isolated negligence attenuated from the arrest, the Court held, the jury should not be barred from considering all the evidence in the case. 555 U.S. at 137, 129 S.Ct. 695. In *Smith,* this Court did refer to *Herring* briefly, as support for its statement that the invalid warrant on which Smith was arrested "was not fabricated to secure appellant's arrest in order to coerce his confession." *Smith,* 995 A.2d at 1153. As discussed in detail *infra,* however, *Smith* did not involve or resolve the question of

ing in *Smith* should apply here, where the police acted on a warrant they believed to be valid, and that the physical evidence obtained as a result of the arrest should not be suppressed. The Commonwealth challenges the Superior Court's conclusion that because there is no good faith exception to the exclusionary rule under Article I, Section 8 of the Pennsylvania Constitution, the evidence seized here must be suppressed; the Commonwealth asserts instead that "there is more to this case than the 'good faith' exception." Commonwealth's Brief at 11. According to the Commonwealth, the absence of a good faith exception should not lead to the exclusion of evidence in every case where the police act on a genuine but mistaken belief that they are entitled to arrest a citizen.

Appellee argues that there was no probable cause to support his arrest other than the invalid arrest warrant, and, even if the warrant were valid, the Commonwealth did not present evidence of probable cause for the warrant itself. Appellee argues that the items seized by the police after the invalid arrest were therefore properly suppressed. Moreover, argues appellee, as a matter of Pennsylvania constitutional law, this Court directly rejected a good faith exception to the exclusionary rule in *Edmunds*. Appellee argues that *Edmunds* was based on the Pennsylvania Constitution's mandate to safeguard the privacy rights of individuals, *see* PA. CONST. art. I, § 8, rather than the need to deter police misconduct, the theory that underpins the jurisprudence of the U.S. Supreme Court in interpreting the Fourth Amendment.

Appellee also rejects the Commonwealth's argument that this Court's decision in *Smith* undermined Pennsylvania precedent following *Edmunds*, simply by making a "veiled reference" to the U.S. Supreme Court's decision in *Herring*. Appellee's Brief at 10. Appellee further argues that *Smith* does not control this case. According to appellee, *Smith* solely addressed the voluntariness of statements made after an

the admissibility of physical evidence seized incident to an illegal arrest. In addition, the *Smith* case did not involve questions of Pennsylvania constitutional law.

illegal arrest, and, specifically, whether a post-arrest confession was sufficiently attenuated from an illegal arrest such that the statements might be considered voluntary. Appellee argues that attenuation and voluntariness simply are not at issue in a case such as this where the physical evidence suppressed was actually seized by the police pursuant to an illegal arrest based on the invalid warrant. Moreover, argues appellee, *Smith* does not address the legal issue here: whether there is a good faith exception to the exclusionary rule as a matter of Pennsylvania law in the arrest warrant scenario. Finally, appellee insists that any alleged good faith by Trooper Knott is irrelevant in determining whether evidence must be suppressed because the exclusionary rule employed to enforce Article I, Section 8 arises out of the constitutional mandate that privacy rights must be upheld.

The Defender Association of Philadelphia and the Pennsylvania Association of Criminal Defense Lawyers ("PACDL") filed *amicus curiae* briefs in support of appellee. The Defender Association argues that, although this Court "effectively invites the Commonwealth" to argue for reconsideration of *Edmunds*, the Commonwealth did not accept that invitation, and the Court should therefore resolve the Commonwealth's claim as presented. The Defender Association argues further that *Smith*, on which the Commonwealth relies instead, is inapposite. However, the Defender Association addresses the good faith exception in the alternative, and argues that the exception should once again be rejected by this Court. Similarly, the PACDL argues that Pennsylvania decisional law has long required that arrests be based upon probable cause, and that physical evidence seized as the result of a search incident to an unlawful arrest must be excluded; according to the PACDL, a police officer's reasonable but mistaken belief in the existence of a valid warrant is constitutionally irrelevant. The PACDL further argues that the U.S. Supreme Court's Fourth Amendment decision in *Herring*—which focuses on the *mens rea* of a police officer—is flawed as a Fourth Amendment matter, but that in any event the decision should be deemed inapplicable given the privacy right underpinnings of

Article I, Section 8 as expressed in various decisions of this Court, including *Edmunds*.

Assuming that there is support in the record for the suppression court's factual findings—and there is no dispute here on the governing facts—we are bound by those facts and we may reverse only if the legal conclusions drawn from those facts are in error. *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111, 112 (1985). If there is sufficient evidence of record to support the suppression court's ruling and the court has not misapplied the law, we will not substitute our credibility determinations for those of the suppression court judge. However, if the court has misapplied the law, we must reverse that court's determination. *Commonwealth v. Queen*, 536 Pa. 315, 639 A.2d 443, 445 (1994).

We find that the trial court properly suppressed the physical evidence seized by police incident to an arrest based solely on an invalid, expired arrest warrant. The courts below granted relief based upon the analysis of the Pennsylvania Constitution set forth in *Edmunds*, which rejected the federal good faith exception to the exclusionary rule (there, in the context of a defective search warrant). *Edmunds* is binding precedent and the Commonwealth has not challenged its validity here. Nor has the Commonwealth offered any meaningful distinction of *Edmunds* in constitutional terms. The courts below were correct that *Edmunds* controls the outcome in such circumstances.

Article I, Section 8 explicitly addresses seizures of persons (here, by an arrest) no less than searches of a person's houses, papers or possessions:

**Security from searches and seizures.** The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. art. I, § 8. The established remedy for illegal seizures and searches, in criminal cases, is exclusion of the fruits of the illegal police conduct—under both the Fourth Amendment and under Article I, Section 8. That general rule of exclusion, of course, is subject to numerous exceptions. The U.S. Supreme Court recognized a new such exception to the Fourth Amendment's exclusionary rule in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Leon* held that, where a police officer conducts a search in objective good faith reliance upon a search warrant duly issued by a magistrate or judge, the Fourth Amendment does not require exclusion of evidence found pursuant to the warrant, even if it is later determined that there was no probable cause for the warrant to issue. 468 U.S. at 926, 104 S.Ct. 3405. The High Court considered that the deterrence goal of the federal exclusionary rule based on the Fourth Amendment would not be served by applying it in circumstances where officers have properly relied on a subsequently invalidated search warrant. *Id.* In its subsequent decision in *Herring,* 555 U.S. 135, 129 S.Ct. 695, the High Court considered the good faith exception in an expired arrest warrant context, ultimately adopting a conditional application of the good faith exception, turning upon the reason why the expired warrant was erroneously deemed valid, *i.e.,* whether the error in failing to purge the warrant was systemic or not.

This Court's consideration and rejection of the *Leon* good faith exception as a matter of state constitutional law in *Edmunds* did not turn upon the nature of the intrusion—*i.e.,* whether a search was at issue or a seizure was at issue—but rather upon the perceived values furthered by the exclusionary rule applied under Article I, Section 8 of Pennsylvania's Constitution. By way of background, Edmunds was convicted of drug related charges, after the admission into evidence of marijuana seized at his property pursuant to a search warrant, a warrant later determined to have been unsupported by probable cause because the warrant affidavit "failed to set forth with specificity the date upon which the anonymous informants observed the marijuana." 586 A.2d at 888. The

trial court denied Edmunds's motion to suppress on the basis of *Leon,* concluding that the officers executing the warrant had acted in good faith by relying on that warrant to conduct the search. On appeal, the Superior Court adopted the trial court's reasoning and affirmed in a divided panel decision. *Commonwealth v. Edmunds,* 373 Pa.Super. 384, 541 A.2d 368 (1988).

■■■■ This Court reversed, rejecting *Leon* as an Article I, Section 8 matter, and holding that Section 8 "does not incorporate a 'good faith' exception to the exclusionary rule." *Edmunds,* 586 A.2d at 905–06. The *Edmunds* Court examined the question by considering: (1) the text of the provision of the Pennsylvania Constitution; (2) the history of the provision, including the caselaw of this Commonwealth; (3) relevant caselaw from other jurisdictions; and (4) policy considerations, "including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence." *Id.* at 895. After applying this state constitutional paradigm—now generally known as an *"Edmunds* analysis"—to the facts at hand, the Court concluded that the evidence seized from Edmunds's property based on an invalid search warrant should have been suppressed. *Id.* at 905–06. *Edmunds* turned on a determination that, under Article I, Section 8, the exclusionary rule in Pennsylvania serves other values besides deterrence; it also vindicates an individual's right to privacy:

> [G]iven the strong right of privacy which inheres in Article 1, Section 8, as well as the clear prohibition against the issuance of warrants without probable cause, or based upon defective warrants, the good faith exception to the exclusionary rule would directly clash with those rights of citizens as developed in our Commonwealth over the past 200 years. To allow the judicial branch to participate, directly or indirectly, in the use of the fruits of illegal searches would only serve to undermine the integrity of the judiciary in this Commonwealth. From the perspective of the citizen whose rights are at stake, an invasion of privacy, in good faith or bad, is equally as intrusive. This is true whether it

occurs through the actions of the legislative, executive or the judicial branch of government.

*Id.* at 901 (internal citations omitted). Therefore, the exclusionary remedy was deemed available even in a situation where police acted in good faith.

The Commonwealth, in making its argument that the physical evidence here should not be suppressed, has not engaged in a state constitutional analysis under the *Edmunds* paradigm, nor has the Commonwealth argued that *Edmunds* itself should be modified or rejected.[4] Indeed, the Commonwealth cites to *Edmunds* only once in its three-page argument, while arguing that this Court's failure to adopt a good faith exception to the exclusionary rule there "does not lead to the exclusion of evidence in every case where the police act on a mistaken belief that they are entitled to seize certain evidence." Commonwealth's Brief at 11. Of course, every decision must be read against its facts, and it may well be true that this Court will come to recognize exceptions to various general rules in the Article I, Section 8 area—no less than in other areas of the law. But the Commonwealth's position

**4.** This author has questioned the supporting analysis and therefore the correctness of the specific result in *Edmunds*, on the *Edmunds* Court's asserted grounds that Pennsylvania's exclusionary rule serves a different purpose than the Fourth Amendment and is not simply deterrence-based. Specifically, I have expressed concern that the *Edmunds* Court, while adopting a state constitutional review paradigm that required consideration of the history of Article I, Section 8, failed to recognize or account for the Court's cases predating *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which had rejected the exclusionary rule as an Article I, Section 8 remedy. *See Commonwealth v. Russo*, 594 Pa. 119, 934 A.2d 1199, 1207–09 (2007) (explaining history and prior cases).

Nevertheless, despite my continuing reservations respecting the accuracy and completeness of the state constitutional analysis of the question presented in *Edmunds*, I have expressed general agreement with the *Edmunds* state constitutional law paradigm, and I have employed it often, *see, e.g., Russo; Theodore v. Delaware Valley Sch. Dist.*, 575 Pa. 321, 836 A.2d 76 (2003) (Article I, Section 8 in school search context); *Commonwealth v. Glass*, 562 Pa. 187, 754 A.2d 655 (2000) (Article I, Section 8 in anticipatory search warrant context), and in areas implicating constitutional provisions other than Article I, Section 8. *See Pap's A.M. v. City of Erie*, 571 Pa. 375, 812 A.2d 591 (2002) (Article I, Section 7 in freedom of expression context).

begs the question: the task for the Commonwealth is to articulate a principled reason, consonant with the *Edmunds* Court's existing articulation of the purpose of the exclusionary rule under Article I, Section 8, why we should not apply the exclusionary remedy here.

The Commonwealth has not explained why exclusion of the evidence seized here, unlike the exclusion of the evidence seized in *Edmunds*, would not vindicate the privacy interests of Pennsylvania citizens, or would forward some other value that was not at issue or sufficiently acknowledged in *Edmunds*. Indeed, under the rationale articulated in *Edmunds*, there is at least as much reason to afford an exclusionary remedy in the expired arrest warrant scenario as in the defective search warrant scenario. The mistake in *Edmunds* was made by the magistrate assessing probable cause; the executive branch (there, embodied by the police executing the warrant) did nothing wrong. This case involves an arrest warrant, not a search warrant, but the defect leading to suppression below did not involve a mistake in the judicial issuance of a warrant without probable cause.[5] Rather, the lapse arose somewhere in the executive branch—not with the arresting officer, but with whoever was responsible for purging executed warrants in a timely fashion.

Thus, this case, unlike *Edmunds*, involves a situation where application of the exclusionary rule would not only serve the same privacy-based function it was deemed to serve in *Edmunds*, but also would serve some generalized deterrence function. In this regard, it is worth noting that appellee already suffered the authorized compromise of his liberty *via* a prior arrest on the same warrant. Application of the exclusionary rule may encourage the executive to adopt more efficient measures to purge executed arrest warrants and thereby to better ensure the privacy rights of Pennsylvanians.

Finally, we are unconvinced by the Commonwealth's argument that this Court's decision in *Smith*, 995 A.2d 1143,

---

5. We recognize that appellee would contest the probable cause in the warrant, but for purposes of our controlling analysis, we may assume the warrant was valid.

directs that the evidence seized from appellee pursuant to his arrest under an expired warrant should be deemed admissible. *Smith* posed no question sounding under Article I, Section 8, much less did it pose the question of whether the *Edmunds* Court's rejection of a good faith exception to the exclusionary rule under Section 8 should be recognized in a scenario involving an illegal arrest pursuant to an expired arrest warrant. · Rather, *Smith* involved a question—apparently raised exclusively under federal law, since the opinion never indicates that the decision was premised upon, or rendered under, our state charter—involving alleged ineffective assistance of counsel in failing to challenge a confession on grounds that it was the fruit of an illegal arrest.

In *Smith*, while investigating a murder, and executing a related search warrant at Smith's home, police arrested Smith on what they believed to be an outstanding warrant for an unrelated sexual assault; the arresting officers were not aware that the arrest warrant had already been served and the assault charge dismissed. 995 A.2d at 1151. While in custody after the arrest, Smith waived his *Miranda* rights and told the police he met the murder victim the evening of the murder, and that they later parted ways, but then Smith invoked his right to remain silent and requested counsel. Afterwards, the police learned that their warrant based on the assault charge was invalid, and they arrested Smith a second time on the murder charge. Smith eventually indicated he was willing to waive his *Miranda* rights, he did waive them, and then gave a tape-recorded confession admitting to the murder. *Id.* at 1152–53.

This Court held that Smith's initial arrest was illegal but that his confession was admissible at trial, and therefore rejected Smith's derivative ineffectiveness claim. The Court noted that not all confessions or admissions secured from an illegally arrested person are *per se* inadmissible as trial evidence. *Id.* Whether such evidence is admissible, we noted, depends on the facts in each case, considering the following factors: "(1) whether *Miranda* warnings were given; (2) the 'temporal proximity of the arrest and the confession'; (3) 'the

presence of intervening circumstances'; and, (4) 'the purpose and flagrancy of the official misconduct.' The voluntariness of the statement is, of course, a threshold requirement, and the confession must also be 'free of any element of coerciveness due to the unlawful arrest.'" *Id.* at 1152 (quoting *McFeely*, 502 A.2d at 170; *Commonwealth v. Bogan*, 482 Pa. 151, 393 A.2d 424, 427 (1978)).[6] Considering the timing and circumstances, we concluded that Smith's "offer to talk to police was not elicited by police conduct." *Id.* at 1153. Moreover, we noted, the "police did not intend to use the expired warrant to effectuate appellant's arrest for the instant crime; rather, due to an administrative error, they mistakenly believed the warrant was still outstanding.... Thus, the warrant under which appellant was arrested, although invalid, was not fabricated to secure appellant's arrest in order to coerce his confession. Accordingly, appellant's confession was voluntarily given and was admissible at trial." *Id.* (internal citations omitted).[7]

**6.** Neither the *McFeely* case nor the *Bogan* case contain any indication that the Court was applying other than Fourth Amendment law.

**7.** Mr. Justice Saylor filed a concurring and dissenting opinion in *Smith* which, on the confession/attenuation doctrine issue discussed in the text above, supported the Court's application of the doctrine in light of precedent from the U.S. Supreme Court. *Id.* at 1175 (Saylor, J., concurring and dissenting) (citing *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). Justice Saylor added, however, that as a matter of pure logic, it seemed to him that the *Brown* factors should apply differently in Pennsylvania than in a federal forum because "the policies underlying the exclusionary rule are substantially broader under Pennsylvania jurisprudence than under federal Fourth Amendment law." *Id.* (comparing *Edmunds* with *Leon* ). Justice Saylor further stated that "it seems somewhat artificial to say that the causal chain between an illegal arrest and an ensuing subsequent confession is 'broken' and the taint 'purged,' where the defendant remains subject to the illegal detention, and in the absence of intervening circumstances beyond the mere giving of *Miranda* warnings." *Id.* Nevertheless, Justice Saylor recognized, the U.S. Supreme Court had established the prevailing attenuation test, and this Court followed it in *McFeely*. Justice Saylor ended his point by noting that he "would prefer a more open acknowledgment of the growing unwillingness at the federal and state levels to apply the exclusionary rule in the absence of intentional or, at least grossly negligent, police conduct." *Id.*

Mr. Justice Baer filed a concurring opinion in *Smith*, joining the *Smith* majority, but writing to, *inter alia*, the question of the admissibility of Smith's confession, in order to address the points made by Justice Saylor. Justice Baer stated that the exclusionary rule should not

The attenuation and voluntariness questions at issue in *Smith*, posing questions involving the application of federal law, simply are not involved here. Instead, in this case, we must determine whether the officer's "good faith" belief that he was arresting appellee on a valid warrant defeats the application of the exclusionary remedy recognized by *Edmunds*, interpreting the Pennsylvania Constitution. *Smith* does not remotely support, much less command, recognition of a good faith exception under the existing Article I, Section 8 construct. We therefore affirm the Superior Court's order affirming the trial court's suppression of the physical evidence seized incident to appellee's illegal arrest.

Order affirmed. Jurisdiction relinquished.

Justices SAYLOR, EAKIN, BAER and TODD join the opinion.

Justice McCAFFERY files a dissenting opinion in which Justice STEVENS joins.

Justice McCAFFERY, dissenting.

The question before the Court is whether evidence found during a search incident to arrest is admissible at trial under Article I, Section 8 of the Pennsylvania Constitution even though the warrant for the arrest was subsequently found to have already been served and thus was no longer valid. In *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), the United States Supreme Court held that when police mistakes in the execution of an expired arrest warrant are the result of negligence, rather than systemic error or reckless disregard of constitutional requirements, the exclusionary rule should not apply. I would hold that Article

preclude admission of Smith's confession because police had independent probable cause to make a warrantless arrest at the time they acted on the expired warrant. *Id.* at 1173 (Baer, J., concurring). Justice Baer also emphasized that the decision in *Smith* should not be read as restricting the application of the exclusionary rule in a proper case, and that he was "opposed to any erosion of the use of this invaluable remedial tool, when appropriate, to preserve our citizens' right to be free from coercive state interference into their lives and affairs." *Id.* at 1174.

I, Section 8 does not require greater privacy protection than the high Court afforded in *Herring.* Accordingly, I dissent.

**Fourth Amendment Jurisprudence**

One hundred years ago, in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), the United States Supreme Court held for the first time that, in a federal prosecution, the Fourth Amendment barred the use of evidence that had been obtained via a warrantless search. Several decades later, in *Wolf v. Colorado,* 338 U.S. 25, 33, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), the high Court expressly limited *Weeks*'s holding to federal prosecutions, stating that "in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure." However, only twelve years after *Wolf* was decided, it was overruled in *Mapp v. Ohio,* 367 U.S. 643, 644–45, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (holding that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court"). Twenty-three years after *Mapp* was decided, the United States Supreme Court limited the scope of the exclusionary rule, holding that evidence obtained by police officers acting in reasonable reliance on a search warrant subsequently found to be unsupported by probable cause was not barred from use at trial. *U.S. v. Leon,* 468 U.S. 897, 900, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In promulgating this "good faith exception" to the exclusionary rule, the high Court held as follows:

> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

*Id.* at 926, 104 S.Ct. 3405.

The *Leon* Court explained that it had re-examined the purposes of the exclusionary rule and concluded that its primary purpose is to deter police misconduct, *i.e.,* "willful, or

at the very least negligent, [police] conduct which has deprived the defendant of some right." *Id.* at 916, 919, 926, 104 S.Ct. 3405 (citations omitted). When the police have not engaged in any misconduct, but rather have acted with objectively reasonable reliance on a search warrant that is subsequently determined to be invalid, then the benefits of applying the exclusionary rule are "marginal or nonexistent." *Id.* at 922, 104 S.Ct. 3405. Under such circumstances, the *Leon* Court held, the costs of applying the exclusionary rule outweigh the benefits, and, pursuant to the good faith exception, determined that the rule is inapplicable. *Id.* at 926, 104 S.Ct. 3405.

The U.S. Supreme Court employed a similar balancing approach to decide a recent case with facts and circumstances closely resembling the case currently before us. *See Herring, supra.* The defendant-petitioner was arrested on a warrant, and a search incident to arrest revealed drugs on his person and an illegally possessed firearm in his motor vehicle. Very shortly after the arrest, the warrant was found to have been recalled months earlier, and thus it was invalid. *Id.* at 137–38, 129 S.Ct. 695. After the defendant-petitioner was indicted for illegal possession of the drugs and the firearm, he moved to suppress the evidence, contending that his arrest was illegal under the Fourth Amendment because the warrant had been rescinded. The district court, adopting the magistrate judge's recommendation, denied the suppression motion, concluding that the arresting officers had acted in a good faith belief that the warrant was still outstanding. The Court of Appeals for the Eleventh Circuit affirmed, holding that the evidence was admissible under the good faith rule of *Leon, supra.* The Eleventh Circuit concluded that the arresting officers had not engaged in any wrongdoing or carelessness, and that the sheriff's office had acted only negligently, not deliberately or tactically, in failing to update the records regarding the warrant's rescission. *Herring, supra* at 138–39, 129 S.Ct. 695.

The high Court affirmed, reiterating that the exclusionary rule is a judicially created rule, not an individual right; is not a necessary consequence of a Fourth Amendment violation; and applies only where it has the potential to result in the

deterrence of future Fourth Amendment violations. *Id.* at 141, 129 S.Ct. 695. The high Court retained its focus on the deterrence of police misconduct: "evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 143, 129 S.Ct. 695 (citations and internal quotation marks omitted). Recognizing that the cases that had given rise to the exclusionary rule involved intentional, flagrant, patently unconstitutional conduct, the high Court made clear that the "exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* at 144, 129 S.Ct. 695.

In applying these principles to the facts and circumstances of *Herring,* the high Court determined that the conduct of the law enforcement officers "was not so objectively culpable as to require exclusion [of the evidence]." *Id.* at 146, 129 S.Ct. 695. There was no evidence that record-keeping errors in the sheriff's office were routine or widespread; rather, the testimony suggested that such errors were rare. *Id.* at 147, 129 S.Ct. 695. Accordingly, the high Court held as follows: "[W]hen police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way'," and thus the exclusionary rule should not apply. *Id.* at 147–48, 129 S.Ct. 695 (citation omitted).

**Pennsylvania Jurisprudence**

### Pre-*Mapp*

Pennsylvania was not quick to conclude that the exclusionary rule constituted an available remedy under—much less an integral part of—Article I, Section 8 of the Pennsylvania Constitution. Although the U.S. Supreme Court adopted the Fourth Amendment exclusionary rule in 1914, for more than four decades, we declined to adopt the exclusionary rule as a

matter of state law.[1] For example, in *Commonwealth v. Dabbierio*, 290 Pa. 174, 138 A. 679, 681 (1927), we recognized but explicitly rejected *Weeks* in upholding, under state constitutional law, the admission of evidence that had been obtained pursuant to a defective search warrant.[2] Rather than follow *Weeks*, the *Dabbierio* Court "[found itself] in more complete accord with ... *McGuire v. United States*, 273 U.S. 95, 99, 47 S.Ct. 259, 260 [71 L.Ed. 556 (1927) ]." *Dabbierio, supra* at 681. In *McGuire, supra* at 260, six federal revenue agents, acting pursuant to a search warrant, seized several gallons of liquor from the defendant-appellant's premises, destroyed most of the liquor without legal authority, but retained two quarts as evidence. The defendant-appellant challenged the admissibility of that evidence, contending that, by destroying the seized liquor, the agents "lost the protection and authority conferred upon them by the search warrant," and thus rendered the seizure illegal under the Fourth Amendment. In denying this challenge, the high Court conceded that the destruction of the liquor was an illegal act, but declined to conclude that the seizure of the liquor or its use as evidence violated any constitutional immunities of the defendant. *Id.* at 260–61. The high Court reasoned as follows, reasoning with which our *Dabbierio* Court explicitly agreed:

> Even if the officers were liable as trespassers *ab initio*, which we do not decide, we are concerned here not with their liability but with the interest of the government in securing the benefit of the evidence seized, so far as may be possible without sacrifice of the immunities guaranteed by the Fourth and Fifth Amendments. A criminal prosecution is more than a game in which the government may be

---

**1.** *See Commonwealth v. Russo*, 594 Pa. 119, 934 A.2d 1199, 1209 (2007).

**2.** The defect in the *Dabbierio* warrant was substantial and intentional: there was no description of the place to be searched, either in the supporting affidavit or in the warrant itself. *Dabbierio*, 138 A. at 680. The affiant and the issuing judicial officer had agreed that the place to be searched should not be specified until after the exact location had been ascertained by service of the warrant. *Id.* This Court determined that "[s]uch a warrant ought not to have been issued, and, if issued, ought not to have been served." *Id.*

checkmated and the game lost merely because its officers have not played according to rule. The use by prosecuting officers of evidence illegally acquired by others does not necessarily violate the Constitution nor affect its admissibility.

*McGuire*, 47 S.Ct. at 260 (quoted in *Dabbierio*, 138 A. at 681).

Thus, even though the facts of *Dabbierio* much more closely resembled those of *Weeks* than those of *McGuire*, the *Dabbierio* Court found more persuasive the high Court's ruling in *McGuire*, which emphasized the interest of the government in securing evidence for and using evidence in criminal prosecutions. Privacy interests protected by the Pennsylvania Constitution did not prevail even though *Dabbierio* was decided under state constitutional law.

The *Dabbierio* decision was consistent with the common law rule, *i.e.*, "the admissibility of evidence is not affected by the illegality of the means by which it was obtained." *Commonwealth v. Chaitt*, 380 Pa. 532, 112 A.2d 379, 381 (1955); *see also Commonwealth v. Connolly*, 290 Pa. 181, 138 A. 682 (1927) (in *dicta*, applying *Dabbierio's* holding); *Commonwealth v. Hunsinger*, 290 Pa. 185, 138 A. 683 (1927) (applying *Dabbierio's* holding in a case with similar facts); *Commonwealth v. Agoston*, 364 Pa. 464, 72 A.2d 575, 585 (1950) (in upholding the admissibility of evidence obtained without a search warrant, applying the common law rule that "the admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence"). This common law rule remained "firmly entrenched in the decisions of the appellate courts of our [ ] Commonwealth," *Chaitt, supra*, until the U.S. Supreme Court in *Mapp* imposed the exclusionary rule on the states for Fourth Amendment purposes. *See Russo*, 934 A.2d at 1199; *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304, 306–09 (1963) (in the first case challenging the admissibility of evidence obtained through an allegedly illegal search and seizure to reach this Court after *Mapp*, recognizing that *Mapp* prohibited the use in state courts of evidence that had been obtained by unreasonable search and seizure).

### Post-*Mapp*, Pre-*Edmunds*

In the three decades immediately following *Mapp* and *Bosurgi*, this Court decided numerous search and seizure cases. In many, this Court's rulings were aligned with federal jurisprudence. *See, e.g., Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29, 31 n. 2, 34 (1973) (holding, under the Fourth Amendment and Article I, Section 8, that a warrant to search an apartment does not extend to a visitor's suitcase found in that apartment), *overruled, Commonwealth v. Reese*, 520 Pa. 29, 549 A.2d 909, 910–12 (1988) (citing *United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), in overruling *Platou*, and holding that the search of a visitor's jacket was within the scope of a warrant to search an apartment for drugs); *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101, 105–07 (1978) (following a coterminous approach with respect to the Fourth Amendment and Article I, Section 8, and holding that it was reasonable for constitutional purposes for the police to seize and hold a vehicle until a search warrant could be obtained, where the seizure occurred after the owner had been placed into custody); *Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378, 385 (1979) (accepting "the wisdom of [the federal] approach" in holding that a violation of a procedural rule for the execution and return of warrants should not render an otherwise valid search illegal unless the defendant can show prejudice); *In Re Search Warrant B–21778*, 513 Pa. 429, 521 A.2d 422, 426–27 (1987) (citing federal Fourth Amendment law in rejecting the appellant's claim that he could assert vicariously the privacy rights of another individual under the Fourth Amendment and Article I, Section 8); *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81, 86–88 (1988) (in holding that Section 5704(2) of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701–82, did not violate Article I, Section 8, finding persuasive the U.S. Supreme Court's rationale in several electronic surveillance cases).

It is therefore apparent that this Court, from its earliest days up through most of the 20th century, discerned no additional or strengthened protections in the Pennsylvania

Constitution as compared to the Fourth Amendment with regard to search and seizure cases. *See also Kerr v. Pennsylvania State Board of Dentistry,* 599 Pa. 107, 960 A.2d 427, 438–39 (2008) (Castille, C.J., concurring) (briefly discussing the history of the exclusionary rule in Pennsylvania).

In the late 1970's, however, a line of cases began to emerge from this Court that departed from federal search and seizure jurisprudence, based on our discernment of greater protection for individual privacy rights in Article I, Section 8 of the Pennsylvania Constitution than in the Fourth Amendment to the U.S. Constitution. In *Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979), this Court declined to follow the U.S. Supreme Court's decision in *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), in which the high Court held that a depositor had no reasonable expectation of privacy in his or her bank records. This Court found the analysis of the California Supreme Court in *Burrows v. Superior Court of San Bernardino County,* 13 Cal.3d 238, 118 Cal.Rptr. 166, 529 P.2d 590 (1974), "in recognizing modern electronic realities, [to be] more persuasive than the simplistic propriety analysis I used by the [U.S. Supreme Court] in *Miller." DeJohn, supra* at 1290. Relying on implicit privacy protections discerned under Article I, Section 8 of the Pennsylvania Constitution, this Court held that "bank customers have a legitimate expectation of privacy in records pertaining to their affairs kept at the bank," and, therefore, a warrant supported by probable cause was required to access them. *DeJohn, supra* at 1291.[3]

In *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457, 459 (1983), the issue was the doctrine of automatic standing to contest a search and seizure when a defendant has been charged with a possessory offense. Three years before *Sell,* the U.S. Supreme Court had abandoned the doctrine of automatic standing, *see United States v. Salvucci,* 448 U.S. 83, 85,

---

**3.** *DeJohn* was the product of a divided Court. However, four justices were in agreement as to the expectation of privacy in bank records. *DeJohn, supra* at 1292; *id.* at 1307 (Manderino, J., dissenting); *see Commonwealth v. Duncan,* 572 Pa. 438, 817 A.2d 455, 460 n. 4 (2003) (discussing the Court's divided decision in *DeJohn* ).

100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), requiring instead that a defendant seeking to challenge the admissibility of evidence under the Fourth Amendment show a legitimate expectation of privacy in the searched area as a predicate to establishing standing. Relying on Article I, Section 8 of the Pennsylvania Constitution, this Court in *Sell* retained the doctrine of automatic standing, thus declining to follow the *Salvucci* holding. *Sell, supra* at 465–66. The *Sell* Court concluded that "Article I, Section 8 of the Pennsylvania Constitution, as consistently interpreted by this Court, mandates greater recognition of the need for protection from illegal governmental conduct offensive to the right of privacy." *Sell, supra* at 468–69.

In *Commonwealth v. Melilli,* 521 Pa. 405, 555 A.2d 1254 (1989), this Court again relied on Article I, Section 8 in declining to follow a U.S. Supreme Court ruling—this time concerning whether a pen register constituted a search and therefore must be supported by probable cause. The U.S. Supreme Court in *Smith v. Maryland,* 442 U.S. 735, 745–46, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), had held that the use of a pen register was not a search under the Fourth and Fourteenth Amendments, and, therefore, no warrant supported by probable cause was required for its installation. However, this Court expressly rejected *Smith,* and relied instead on the privacy interests protected under Article I, Section 8 of the Pennsylvania Constitution to hold that police must obtain a court order based on probable cause before utilizing a pen register. *Melilli, supra* at 1257–59.

### *Commonwealth v. Edmunds*

Citing *DeJohn, Sell,* and *Melilli,* this Court in *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 888, 894, 895 n. 7 (1991), again departed from U.S. Supreme Court precedent, and declined to adopt the "good faith" exception to the exclusionary rule as inconsistent with the guarantees embodied in Article I, Section 8 of the Pennsylvania Constitution. In *Edmunds,* a state trooper served a search warrant on the defendant-appellant at his residence, found marijuana, and arrested him for drug-related offenses. The defendant-appellant moved to suppress the evidence, asserting that probable

cause for the search was lacking and thus the warrant was constitutionally defective. *Id.* at 889–90. Following a hearing, the trial court found that the warrant did indeed lack probable cause under Pennsylvania law; however, the trial court further found that, in executing the warrant, the trooper had acted in good faith reliance thereon, reasonably believing that the warrant was valid because it had been issued by a neutral magistrate. *Id.* at 890. Accordingly, the trial court applied the good faith exception to the exclusionary rule, as had been set forth several years earlier by the U.S. Supreme Court in *Leon, see* discussion in text, *supra,* and denied the defendant-appellant's suppression motion. *Edmunds, supra.* The Superior Court affirmed the order of the trial court.

This Court reversed, holding that "the good faith exception to the exclusionary rule is [not] properly part of the jurisprudence of this Commonwealth, by virtue of Article I, Section 8 of the Pennsylvania Constitution" because it would "frustrate the guarantees embodied" therein, particularly with regard to personal privacy interests. *Id.* at 894, 895. In reaching this holding, *Edmunds* set forth a methodology to be used in analyzing issues that arise under the Pennsylvania Constitution. *Id.* at 894. Specifically, the Court determined that it was "important" for the litigants in any future case implicating a provision of the Pennsylvania Constitution, to brief and analyze at least the following four factors:

  1) text of the Pennsylvania constitutional provision;
  2) history of the provision including Pennsylvania case-law;
  3) related case-law from other states;
  4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Id.* at 895.

This Court in *Edmunds* then proceeded to consider each of these factors in light of the circumstances of that case. With regard to the constitutional text, *Edmunds* acknowledged that the Fourth Amendment and Article I, Section 8 were "similar in language." *Id.* at 895. As this Court has expressly acknowl-

edged, "it is not the text itself [of Article I, Section 8] which imbues Pennsylvania jurisprudence with its unique character but, rather, the history of our case law as it has developed in the area of search and seizure." *Commonwealth v. Glass,* 562 Pa. 187, 754 A.2d 655, 662 n. 11 (2000) (citation omitted).

Turning to the history of Article I, Section 8, *Edmunds* noted that Pennsylvania's constitutional protection against unreasonable search and seizure predated the Fourth Amendment by fifteen years, and, as a part of the Declaration of Rights, was "an organic part of [Pennsylvania's] original constitution of 1776." *Edmunds, supra* at 896; *see also Sell, supra* at 466. The "modern" version of the search and seizure provision, i.e., Article I, Section 8, dates from 1790. *Edmunds, supra* at 897. *Edmunds* also noted the primary purpose of the warrant requirement guaranteed by Article I, Section 8:

The primary purpose of the warrant requirement was to abolish 'general warrants,' which had been used by the British to conduct sweeping searches of residences and businesses, based upon generalized suspicions. Therefore, at the time the Pennsylvania Constitution was drafted in 1776, the issue of searches and seizures unsupported by probable cause was of utmost concern to the constitutional draftsmen.

*Id.* at 897 (internal citations omitted).

Despite the early constitutional guarantees of the right to be free from unreasonable search and seizure, *Edmunds* recognized that the remedy provided by the exclusionary rule had been unavailable in Pennsylvania until it was mandated by the 1961 ruling of the U.S. Supreme Court in *Mapp, supra. See* text, *supra.* However, as discerned in *Edmunds,* beginning in the 1970's, "this Court began to forge its own path under Article I, Section 8 of the Pennsylvania Constitution, declaring ... that Article I, Section 8 [ ] embodied a strong notion of privacy, notwithstanding federal cases to the contrary." *Edmunds, supra* at 898 ("From *DeJohn* forward, a steady line of caselaw has evolved under the Pennsylvania Constitution, making clear that Article I, Section 8 is unshak-

ably linked to a right of privacy in this Commonwealth.") (citing *Platou, supra* (1973); *DeJohn, supra* (1979); *Sell, supra* (1983); *Blystone, supra* (1988); and *Melilli, supra* (1989)); and *Glass, supra* at 662 n. 11 (stating that *Edmunds* found a "clear divergence from [the] philosophical underpinnings of [the] federal exclusionary rule [beginning] in 1973") (internal quotation marks omitted).

Based on this emphasis on personal privacy, *Edmunds* concluded that the exclusionary rule in Pennsylvania "served to bolster the twin aims of Article I, Section 8; to wit, the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." *Id.* at 899. *Edmunds* explicitly rejected the U.S. Supreme Court's view in *Leon* that the sole purpose of the exclusionary rule was to deter police misconduct:

> [W]e disagree with [the U.S. Supreme] Court's suggestion in *Leon* that we in Pennsylvania have been employing the exclusionary rule all these years to deter police corruption. We flatly reject this notion. We have no reason to believe that police officers or district justices in the Commonwealth of Pennsylvania do not engage in "good faith" in carrying out their duties.

*Edmunds, supra* at 899.

Thus, relying on decisional law from the late 1970's and 1980's, *Edmunds* concluded that adoption of the good faith exception to the exclusionary rule would emasculate the strong right of privacy and the equally strong adherence to the requirement of probable cause that had developed under Article I, Section 8. *Id.* at 899. *Edmunds* also drew support from rulings in other states that had declined to adopt a good faith exception. More specifically, *Edmunds* briefly summarized rulings from the highest courts of New Jersey, Connecticut, and North Carolina, each of which had concluded that the exclusionary rule serves broader purposes than merely the deterrence of police misconduct, and therefore had rejected the good faith exception. *Id.* at 900–901.

Finally, *Edmunds* addressed the fourth factor, to wit, policy considerations. *Edmunds* concluded that adoption of a good faith exception would "effectively nullify" Pa.R.Crim.P.2003, which requires that an inquiry into probable cause for a search warrant be confined to the written affidavit and warrant, "in order to avoid any doubt as to the basis for probable cause." *Edmunds, supra* at 903. *Edmunds* stressed the requirement that an independent magistrate make a determination of probable cause prior to the issuance of any search warrant. *Id.* at 904–905. *Edmunds* also questioned the magnitude of the costs of applying the exclusionary rule in practice and the concerns attached to the alternative remedy, *i.e.*, allowing victims of improper searches to sue police officers directly. *Id.* at 904. Finally, *Edmunds* noted that Pennsylvania's adoption of the flexible, totality of the circumstances standard for determining probable cause, eliminated concerns that the exclusionary rule might be applied in an overly rigid manner. *Id.* Based on the above-summarized analysis, *Edmunds* held that the protections embodied in Article I, Section 8 of the Pennsylvania Constitution precluded adoption of the good faith exception to the exclusionary rule when a search warrant was subsequently determined to have been issued without probable cause.

## Post-*Edmunds* Cases

In the years since *Edmunds,* this Court has decided numerous Article I, Section 8 and Fourth Amendment cases. In many, this Court has followed the prevailing Fourth Amendment standard, concluding that Article I, Section 8 and the Fourth Amendment provide comparable protections. *See, e.g., Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226, 228 (1996) (reiterating that, under Article I, Section 8, police may "stop and frisk" based upon reasonable suspicion, following the U.S. Supreme Court's holding in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *In re D.M.,* 566 Pa. 445, 781 A.2d 1161, 1163 (2001) (stating that Pennsylvania courts have consistently followed *Terry, supra,* in stop and frisk cases; declining to depart from this longstanding practice; and seeing "no reason at this juncture to embrace a standard

other than that adhered to by the United States Supreme Court" for stop and frisk cases); *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031, 1039 (1997) (in the context of a challenge to a warrantless search of a parolee's bedroom, concluding that the same standard for the legality of the search applies under Article I, Section 8 and the Fourth Amendment); *Com v. Hawkins*, 553 Pa. 76, 718 A.2d 265, 268–69 (1998) (maintaining, under Article I, Section 8, consistent with federal Fourth Amendment jurisprudence, a bar on derivative standing, a doctrine that would have allowed the defendant to assert vicariously the privacy interests of another in a suppression motion); *Commonwealth v. Cleckley*, 558 Pa. 517, 738 A.2d 427 (1999) (applying the federal standard of voluntariness to the question of whether a search had been consensual and concluding that an independent state constitutional analysis under Article I, Section did not suggest a distinct standard); *Commonwealth v. Glass*, 562 Pa. 187, 754 A.2d 655 (2000) (in agreement with federal law and the law of most states, holding that anticipatory warrants are not categorically prohibited in Pennsylvania by Article I, Section 8); *Commonwealth v. Duncan*, 572 Pa. 438, 817 A.2d 455, 459, 469 (2003) (distinguishing *DeJohn, supra,* in holding that the defendant-appellant had no reasonable expectation of privacy under Article I, Section 8 in the name and address information provided by his bank to the police); *Commonwealth v. Russo*, 594 Pa. 119, 934 A.2d 1199, 1200, 1205–13 (2007) (after conducting a detailed *Edmunds* analysis, concluding that the Fourth Amendment "open fields" doctrine enunciated in *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), applies equally under Article I, Section 8, and thus federal and state law in this regard are coextensive); *see also Commonwealth v. Basking*, 970 A.2d 1181 (Pa.Super.2009) (adopting the apparent authority exception to the warrant requirement as a matter of state constitutional law and concluding that the rights conferred under Article I, Section 8 and the Fourth Amendment are co-extensive in this regard).

In contrast to the above-cited cases, in the following examples, our scrutiny of the specific privacy interest asserted

under Article I, Section 8 led us to conclude that heightened protections, as compared to the federal standard, were warranted. *See, e.g., Commonwealth v. Mason,* 535 Pa. 560, 637 A.2d 251 (1993) (under Article I, Section 8, suppressing evidence discovered when, in the absence of exigent circumstances, police forcibly entered a residence while awaiting the issuance of a search warrant, even though under U.S. Supreme Court Fourth Amendment precedent the evidence would have been admissible pursuant to the independent source doctrine); *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896, 901–02 (1995) (declining to follow *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), based on the enhanced privacy interests inherent in Article I, Section 8, and holding that when an occupant of an automobile is placed under arrest, the search incident to arrest does not encompass a search of the arrestee's automobile); *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769 (1996) (rejecting the U.S. Supreme Court's Fourth Amendment-based reasoning in *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), and holding that, pursuant to the privacy rights guaranteed under Article I, Section 8, pursuit by a police officer, without probable cause or reasonable suspicion, constitutes a seizure, and accordingly requires suppression of contraband discarded by a defendant during a chase); *Commonwealth v. Hawkins,* 547 Pa. 652, 692 A.2d 1068, 1069–71 & n. 2 (1997) (rejecting the decisions of several federal circuit courts in holding that, under Article I, Section 8, an anonymous tip that a man with a particular description at a particular location was carrying a gun did not constitute sufficient justification for police to conduct a stop and frisk pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (*see also Hawkins, supra* at 1071 (Newman, J., dissenting))); *Theodore v. Delaware Valley School District,* 575 Pa. 321, 836 A.2d 76, 84, 88 (2003) (in the context of a challenge to a school district's policy of suspicionless testing of certain students for drug and alcohol use, rejecting the U.S. Supreme Court's Fourth Amendment jurisprudence in favor of a distinct approach under Article I, Section 8, which

recognizes "a strong notion of privacy ... greater than that of the Fourth Amendment.") (citation omitted).

**Application of *Edmunds* Factors to this Case**

As discussed above, the U.S. Supreme Court in *Herring, supra,* a case with facts very similar to the instant case, concluded that, under the Fourth Amendment, the exclusionary rule should not apply when police serve an expired arrest warrant due to a non-systemic error of negligence in administrative record-keeping. The question now before us is whether Article I, Section 8 requires greater privacy protection than the high Court afforded in *Herring.* This can be determined only after consideration and analysis of the circumstances of this case in light of the relevant factors set forth by this Court in *Edmunds.*

With respect to the text of Article I, Section 8, this Court has noted many times that it is similar to that of the Fourth Amendment. *See Russo, supra* at 1205–06; *Hawkins,* 718 A.2d at 269; *Edmunds, supra* at 895–96. There are no textual differences between the two provisions that would suggest greater protection under the Pennsylvania Constitution for a defendant who has been arrested under an expired warrant.

With regard to the history of Article I, Section 8, I have extensively reviewed, *see* text *supra,* this Commonwealth's jurisprudence with respect to search and seizure and the exclusionary rule. No case stands on all fours with the instant case. Our discernment, over the past few decades, of heightened protection of privacy interests under Article I, Section 8 for certain circumstances, does not automatically support the extension of heightened protection to the instant circumstances. As we have repeatedly emphasized, we do not reflexively find "in favor of any new right or interpretation asserted" under Article I, Section 8. *Russo, supra* at 1210 (citation omitted); *Commonwealth v. Smith,* 575 Pa. 203, 836 A.2d 5, 15 (2003); *Commonwealth v. Duncan,* 572 Pa. 438, 817 A.2d 455, 459 (2003). Indeed, we have stated that there should be "compelling reasons" to interpret our state Constitution to

afford defendants greater protections than those granted by the U.S. Constitution. *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921, 926 (1985). Under the circumstances of the instant case, I have not discerned "compelling reasons" to grant greater protections than those afforded by the Fourth Amendment. Rather, my analysis of the utility of and policy behind application of the exclusionary rule has persuaded me that, under the circumstances presented here, there are compelling reasons to conclude that the Fourth Amendment and Article I, Section 8 confer co-extensive protections.

In the cases where this Court has discerned enhanced protection for individual privacy interests under Article I, Section 8, we have articulated a broad view of the purpose of the exclusionary rule. Specifically, we have emphasized that the exclusionary rule in Pennsylvania has "served to bolster the twin aims of Article I, Section 8: to wit, the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." *Edmunds, supra* at 899; *see also Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769, 773 (1996) ("The [*Edmunds* ] Court [ ] concluded that the purpose of the exclusionary rule as developed in Pennsylvania was not solely to deter police conduct, as the United States Supreme Court had interpreted it, but rather was unshakably linked to a right of privacy in this Commonwealth.") (internal quotation marks and emphasis omitted).

Our articulation of these broad goals of the exclusionary rule in Pennsylvania does not and cannot alter the rule's prospective nature, an inherent characteristic that circumscribes the rule's remedial function. Once an unreasonable, illegal search or seizure has taken place, the constitutional violation is accomplished; exclusion of evidence pursuant to the exclusionary rule does nothing to repair or redress the unconstitutional invasion of privacy that has already occurred. *See, e.g., Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357, 362, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998); *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Rather, the exclusionary rule serves to make future constitutional violations less likely by rendering

unusable the fruits of the violation that has already occurred. *See, e.g., Commonwealth v. Miller,* 513 Pa. 118, 518 A.2d 1187, 1195 (1986) (recognizing that "the exclusionary rule is a judicially created device designed to deter improper governmental action in the course of criminal investigations and prosecutions. It is not a personal right of the accused").

Even when focusing on the right to privacy or the mandate of probable cause, goals emphasized by this Court in *Edmunds,* we must be mindful that the exclusionary rule looks ahead to the next case, seeking to prevent future violations of the right to privacy and future issuance of warrants unsupported by probable cause. Accordingly, the exclusionary rule is of marginal value under circumstances where its application is unlikely to yield future benefits with regard to the right to privacy and/or the mandate of probable cause. Furthermore, we must consider not only the marginal value of the rule under such circumstances, but also the costs of the rule with respect to prosecution of the accused and protection of society.

This Court raised similar points concerning the goals of the exclusionary rule and the need to weigh all the interests relevant to its application only a few years after *Edmunds* was decided:

> Upon reflection, it is apparent that in the context of the Fourth Amendment, when a court deters police misconduct, it necessarily also safeguards privacy and the probable cause requirement. Why would a court deter police misconduct at all if not to deter police from improperly invading the right of persons to be secure, *i.e.,* private, in their persons, houses, papers and effects? Deterring police misconduct is not an end in itself. The ultimate distinction, then, between the federal and the Pennsylvania analysis is not that the federal courts seek only to deter police misconduct and the Pennsylvania courts seek to protect certain rights, but that the federal courts place less importance than do we on the right of privacy. Therefore, they balance the interests differently and reach a different conclusion as

to the relative importance of privacy as against securing criminal convictions.

*Mason*, 637 A.2d at 257 n. 3.

In any given case, balancing the individual right of privacy and/or the mandate of probable cause against the public interest in truth-determination at trial and conviction of the guilty, requires a fact-specific inquiry operating between wide parameters. While "the right of privacy is a well-settled part of the jurisprudential tradition in this Commonwealth, . . . the right is not an unqualified one; it must be balanced against weighty competing private and state interests." *Commonwealth v. Cass*, 551 Pa. 25, 709 A.2d 350, 364 (1998) (citation omitted); *see also Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031, 1035–39 (1997) (after balancing the interests of the Commonwealth and the parolee-appellee, concluding that, under the Fourth Amendment or Article I, Section 8, a parolee has a diminished right to privacy as compared to a free individual). Although we have often applied the exclusionary rule, *see* text, *supra*, (setting forth examples), we have never held that its application is mandatory or appropriate for every violation of Article I, Section 8. As *Mason*, *supra*, implies, and has often been explicitly recognized, *see*, *e.g.*, *Davis v. United States*, — U.S. ——, 131 S.Ct. 2419, 2427, 180 L.Ed.2d 285 (2011), application of the exclusionary rule exacts a significant cost to the judicial system in the loss of relevant and trustworthy evidence, and to society in the vindication and release of the guilty. In a recent case, we expressly recognized the need to balance the competing interests involved: "[t]he greatest difficulty in the enforcement of a prophylactic rule intended to guard individual liberties is on account of the competing value in society's interest in identifying and punishing wrongdoers." *Commonwealth v. Henderson*, 616 Pa. 277, 47 A.3d 797, 804 (2012) (in a case decided under Article I, Section 8, holding that the standard for application of the independent source doctrine set forth by the U.S. Supreme Court in *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), "strikes the appropriate balance between privacy and law enforcement").

Furthermore, it is notable, and of no small moment, that the exclusionary rule provides no relief whatsoever for an individual who is the subject of an unreasonable search or seizure that has not led to the discovery of any incriminating evidence. *See, e.g., Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). An innocent victim of an illegal search and seizure has suffered as grievous an invasion of privacy as an accused, but only the accused has any possibility of direct and individual benefit from the exclusionary rule.

Here, there is no question that Appellee's arrest on the inactive warrant was illegal. *See Smith, supra* at 1152. However, neither the Fourth Amendment nor Article I, Section 8 mandates the exclusion of evidence obtained subsequent to an illegal arrest. *See id.; Herring, supra.* The relevant privacy interest at stake—not being taken into custody a second time on an arrest warrant supported by probable cause that has already been served—must be balanced against weighty competing state and public interests in law enforcement that can protect the public effectively, and in criminal prosecutions that can utilize reliable evidence at trial. The weighing of these competing interests is necessarily informed by a consideration of whether application of the exclusionary rule in this case will actually advance the privacy interest at stake. More specifically, we must consider whether exclusion of the evidence in this case is likely to improve record-keeping with regard to expired warrants in the future, thus ensuring that police will receive more accurate information as to the viability of a warrant.

### Conclusion

I conclude that when police make an illegal arrest on an expired warrant as a result of an error in record-keeping reflecting nothing more than a non-systemic instance of administrative negligence, the exclusionary rule should not apply to suppress evidence discovered incident to the arrest. This conclusion logically follows from the marginal impact that application of the exclusionary rule would have on deterring a rare instance of negligent record-keeping. When the slim likelihood of benefit under such circumstances is balanced

against the high price of loss of evidence, I conclude that the exclusionary rule should not apply. However, if the error in record-keeping reflects a systemic or institutional administrative problem leading to repeated errors in the recording and transmission of information as to the status of warrants, then application of the exclusionary rule would be appropriate because of its deterrent effect and consequent promotion of individual privacy. Likewise, and for the same reasons, if law enforcement agents exhibit intentional or reckless disregard of constitutional rights by arresting an individual on a warrant the agents knew or reasonably should have known was expired, application of the exclusionary rule is appropriate. This approach is consistent with the U.S. Supreme Court's Fourth Amendment decision in *Herring,* and I conclude that, under the circumstances presented, the Fourth Amendment and Article I Section 8 provide co-extensive protections.

Here, the trial court specifically determined that there was no misconduct on the part of the arresting officer, who acted on what he, the State Police and the Wilkes–Barre City Police all believed to be an active warrant. Trial Court Opinion, dated 1/24/11, at 5. However, the trial court made no findings as to the nature of the error that led to the misidentification of the warrant as active, and thus, on the record before us, it is impossible to determine if the exclusionary rule should have been applied.

I would, therefore, vacate the order of the Superior Court and remand to the trial court to conduct further proceedings to determine the nature of the error that led to the incorrect characterization of the warrant as active. I would suggest that the trial court consider the relevant administrative procedures in place for tracking arrest warrants and informing police as to the viability of a particular warrant, and the time that elapsed between when the arrest warrant should have been withdrawn and when the accused was arrested.

Justice STEVENS joins this opinion.