J-S41013-19

2019 PA Super 301

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TIRRELL WILLIAMS :
:
Appellant : No. 544 MDA 2019

Appeal from the PCRA Order Entered March 28, 2019
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0002010-2012

BEFORE: LAZARUS, J., MURRAY, J., and STRASSBURGER*, J.

OPINION BY LAZARUS, J.: **FILED OCTOBER 08, 2019**

Tirrell Williams appeals *pro* se[1] from the trial court's order dismissing

his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.

§§ 9541-9546. After careful review, we affirm.

In November 2012, Williams was charged with robbery, conspiracy,

theft by unlawful taking, and simple assault. After a jury trial, he was

convicted of one count each of robbery[2] (threatens/fear of immediate serious

---

[1] The trial court granted court-appointed PCRA counsel's petition to withdraw, pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988), on October 6, 2017.

[2] 18 Pa.C.S.A. § 3701(a)(1)(ii) (first-degree felony).

---

\* Retired Senior Judge assigned to the Superior Court.

bodily injury), robbery (inflicts bodily injury),[3] theft by unlawful taking,[4] and

simple assault.[5]  The trial court set forth the following factual and procedural

history of this case as follows:

> On the night of January 5, 2012, Michael Stewart (Stewart) met
> Amy Baird (Baird) at a bar, where Stewart had two pitchers of
> beer and Baird had more than three drinks.  After spending some
> time at the bar, Stewart and Baird went to Baird's house.   At the
> house, Baird told Stewart that she wanted marijuana, and Stewart
> gave Baird money to pay for marijuana.  Baird used Stewart's
> phone to order marijuana.  An individual, who was not [Williams],
> came to Baird's house and sold Baird a bag of drugs.  About
> thirteen minutes later, Baird and Stewart realized that the bag
> contained a drug that was not marijuana.  Baird again used
> Stewart's phone to call the individual who had originally delivered
> the drugs.  Baird asked the individual to come back to the house
> with marijuana.  When the individual came back, he was with
> [Williams] and two other people.  The individual, [Williams], and
> the two other people will be referred to as the group.
>
> Baird testified that she and [Williams] went to the upstairs of the
> house.  A short time later, they returned downstairs, where they
> saw the three others in the group and Stewart in the kitchen.
> Baird testified that she again went upstairs, this time alone.  Baird
> testified that while she was upstairs, she heard a commotion
> downstairs.  Therefore, she went downstairs, where she saw the
> group stomping and punching Stewart, while he was on the
> kitchen floor.  As mentioned above, the group included [Williams].
>
> Stewart testified that the group surrounded him while he was in
> the kitchen cleaning up hot oil.  He testified that while he was
> talking with one member of the group, another member would
> start talking to him.  Stewart testified that he was talking to
> [Williams] when he heard another member of the group say, "Yo
> partner, let me talk to you."  Stewart testified that he turned to
> talk to the member who made the "partner" comment and was

---

[3] 18 Pa.C.S.A. § 3701(a)(1)(iv) (second-degree felony).

[4] 18 Pa.C.S.A. § 3921(a).

[5] 18 Pa.C.S.A. § 2701(a)(1).

then struck in the back of the head by [Williams]. Stewart testified that the group beat him and punched him. One member of the group hit him in the head with a glass bottle, which caused him to fall to the floor. Stewart testified that he did not know which member hit him with the bottle. Stewart testified that while he was on the floor, the group kicked him and stomped him all over his body. Stewart testified that he rolled up into the fetal position to protect himself.

Stewart testified that[,] while he was on the floor, one member of the group said, "Stand this [MF] up, so I can shoot him." Stewart did not know which member said this, but he felt the members trying to grab his arms to stand him up. Stewart testified that he did not let the group stand him up because he was scared that he would be shot and killed. Stewart testified that one member of the group poured hot oil on him. Stewart testified that he did not know which member poured the oil on him. After feeling the hot oil, Stewart got up and ran into the living room.

Stewart testified that[,] while he was on the floor, he could feel members of the group going through the pockets of his pants. He testified that[,] before the incident, he had his wallet and cell phone in his pockets. Stewart testified that after the incident, he no longer had his wallet and cell phone.

After the incident, Baird called [the] police. Officer Mark Lindauer (Lindauer) of the Williamsport Bureau of Police responded to the call. Lindauer noticed that there was grease and broken glass on the kitchen floor.

Stewart was taken to the hospital by ambulance. As a result of the incident, he had a one[-]inch laceration on his head and a headache for three to four days. In addition, he was bruised and stiff for a week.

On October 24, 2013, a jury found [Williams] guilty of [c]ount 1 [([r]obbery)] (threaten another with or intentionally put another in fear of immediate serious bodily injury), [c]ount 3 [([r]obbery)] (inflicting bodily injury), [t]heft by [u]lawful [t]aking, and [s]imple [a]ssault. On March 27, 2014, this [c]ourt sentenced [Williams] to a minimum of six years and a maximum of twelve years in a state correctional institution. The [c]ourt also sentenced [Williams] to eight years of supervision under the Pennsylvania Board of Probation and Parole[,] to run consecutively to the prison term.

- 3 -

Trial Court Opinion on Post-Sentence Motions, 7/28/14, at 1-3 (footnotes omitted).

Williams filed post-sentence motions that were denied. He filed a direct appeal and our Court affirmed Williams' judgment of sentence. *Commonwealth v. Williams*, No. 1434 MDA 2014 (Pa. Super. filed March 20, 2015) (unpublished memorandum). On April 15, 2016, Williams filed a *pro se* PCRA petition; counsel was appointed and filed a petition to withdraw pursuant to *Turner*/*Finley*. After an independent review of the record and a conference, the court denied the petition and granted counsel's petition to withdraw. Williams filed a collateral appeal; our Court vacated the PCRA court's order finding that the court failed to give Williams notice of its intent to dismiss his PCRA petition pursuant to Pa.R.Crim.P. 907. Our Court remanded the matter to the trial court and "direct[ed] the PCRA court to serve a new Rule 907 notice on [Williams], and permit him 20 days to respond, raising any challenges to PCRA counsel's *Turner*/*Finley*, claims of PCRA counsel's ineffectiveness, and/or arguments regarding the merits of his underlying issues." *Commonwealth v. Williams*, No. 431 MDA 2018, at 7-8 (Pa. Super. filed Oct. 16, 2018) (unpublished memorandum).

On November 2, 2018, the court issued Rule 907 notice to Williams; counsel filed another motion to withdraw. On March 6, 2019, Williams received another Rule 907 notice to which he filed a response. On March 28, 2019, the PCRA court dismissed Williams' petition. Williams filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of

errors complained of on appeal. On appeal, Williams presents the following issues for our consideration:

> (1) Did the PCRA [c]ourt and [c]ounsel commit an error as a matter of law, wherein they claimed that [Williams'] following issues did not contain any merit
>
>> (a) Trial counsel's failure to file a [m]otion to [s]uppress[;]
>>
>> (b) Trial counsel's failure to object and move for a new jury pool[;]
>>
>> (c) Trial counsel's failure to present evidence of [p]olice[]reports and other prior testimonies [sic] at trial[;]
>>
>> (d) Trial counsel's failure to question the Commonwealth's witnesses about the possibility of leniency at trial[;] and
>>
>> (e) Trial counsel's failure to present the proper insufficient evidence claim or challenge all [of Williams'] convictions on direct appeal.

Appellant's Brief, at 5 (emphasis deleted).

The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error. **_Commonwealth v. Johnston_**, 42 A.3d 1120, 1126 (Pa. Super. 2012). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **_Id._**

We first address a procedural issue, namely waiver, concerning this appeal. Pursuant to Pa.R.A.P. 1925(b)(4)(ii):

> [An appellant's Rule 1925(b)] Statement shall concisely identify each error that the appellant intends to assert **with sufficient detail to identify the issue to be raised for the judge**. The judge shall not require the citation to authorities or the record;

> however, appellant may choose to include pertinent authorities and record citations in the Statement.

Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). Williams' Rule 1925(b) statement sets forth, in relevant part, the following issues: (1) "Counsel's failure to present witnesses' police reports at tr[ia]l" [; and] (2) "Counsel's failure to question [C]ommonwealth's witnesses about leniency." Pa.R.A.P 1925(b) Concise Statement of Matters Complained of on Appeal, 4/25/19. The trial court has not addressed the police report issue in its Rule 1925(a) opinion due to the vagueness of Williams' concise statement[6]. Thus, we find it waived. Moreover, Williams' issue regarding failure to question witnesses about leniency similarly fails where it does not identify exactly which witnesses he is referencing. The trial court only addresses the issue as it relates to witness Baird; thus we find only that portion of the issue preserved for appeal purposes.[7]

---

[6] The trial court has indicated that it is relying upon the opinion it authored in dismissing Williams' PCRA petition for purposes of this collateral appeal. **See** Pa.R.A.P. 1925(a)(1) ("[T]he judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall within the period set forth in Pa.R.A.P. 1931(a)(1) file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.").

[7] Williams also argues in his appellate brief that "counsel did not attempt to question Mr. Stewart . . . in front of the fact finders, about not being charged with the drugs [he] admitted to buying and if that was [his] motivation for testifying[.]" Appellant's Brief, at 35. Because Williams' Rule 1925(b) statement is vague on this issue, we also find it waived.

We now turn to the merits of Williams' preserved claims. Because each of his claims involves the ineffective assistance of counsel, we note that to succeed on such a claim, Williams must demonstrate by a preponderance of the evidence that:

> (1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010).

Williams first contends that counsel was ineffective for failing to move to suppress statements he made prior to being *Mirandized*.[8] Specifically, he claims that he was subject to a custodial interrogation without first being advised of his right to remain silent or have counsel present during questioning.

"It is the Commonwealth's burden to establish whether [a defendant] knowingly and voluntarily waived his *Miranda* rights. In order to do so, the Commonwealth must demonstrate that the proper warnings were given, and that the accused manifested an understanding of these warnings." *Commonwealth v. Baez*, 21 A.3d 1280, 1283 (Pa. 1998) (citation omitted). Police are required to read a suspect his *Miranda* warnings when he is in custody and subject to interrogation. Moreover, the "prosecution may not use statements, whether inculpatory or exculpatory, stemming from a custodial interrogation of a defendant unless it demonstrates that he was apprised of

---

[8] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

his right against self-incrimination and his right to counsel. [I]n evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances." *Commonwealth v. Gaul*, 912 A.3d 252, 255 (Pa. 2006) (citations and headnotes omitted).

Instantly, Agent Trent Peacock, an agent with the Williamsport Bureau of Police, testified that on November 7, 2012, he questioned Williams regarding the robbery of the victim. Agent Peacock testified that before he conducted the interview, he advised Williams of his *Miranda* rights and that Williams waived them. N.T. Writ of Habeas Corpus Proceeding, 2/26/13, at 20. In the statement he made to the agent, Williams admitted that: he was involved in the assault of Stewart; he threw the initial punch and kicked him; that his three associates also jumped in and participated in the assault; and no one took any of Stewart's property. *Id.* at 20-21. Agent Peacock also testified that when he initially brought Williams in to talk to him about the robbery of which he was being accused, "[Williams] made statements to the effect that he never robbed anybody, that if he was going to rob someone it would be a bank, and [that the police] would never catch him because he would shoot it out." N.T. Jury Trial, 10/24/13, at 121-22.

After viewing the subject interaction between Williams and Agent Peacock, there is no question that Williams was in custody at the time of his interview. Williams was placed in a small room in the police station with the door closed, where he encountered the agent one-on-one. We also find that

the encounter rose to the level of an interrogation such that **Miranda** safeguards were implicated.

Interrogation has been defined as "questioning initiated by law enforcement officials." **Commonwealth v. DeJesus**, 787 A.2d 394, 401 (Pa. 2001). The "functional equivalent" of interrogation includes "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." **Id.** at 402. Here, Agent Peacock specifically asked Williams "what happened that night," and whether Williams "want[ed] to talk to [the agent]" about the case. **See** Commonwealth Exhibit 11 (November 7, 2012 videotaped interview between Williams and Agent Peacock). This line of questioning certainly rises to the level of "interrogation," where it was reasonably likely to elicit an incriminating response from Williams.

The videotape of the interview shows that Williams was not in fact read his **Miranda** rights until after he told Agent Peacock that he was not involved in the subject robbery and after the agent asked Williams if the officers that brought him into the station for questioning had already advised him of his rights. Accordingly, the prosecution was not permitted to use statements stemming from Agent Peacock's custodial interrogation of Williams where he was not first **Mirandized** even where those statements were exculpatory. **Gaul**, **supra**; **DeJesus**, **supra**.

Despite Williams' claim that "counsel's deficient performance prejudice[d] [Williams where his] incriminating statement was used at trial

against him [and] made the outcome of trial a foregone conclusion," Appellant's Brief at 46, we conclude that he is not entitled to relief on this claim. The fact that Williams' initial exculpatory, non-**Mirandized** statement was admitted at trial was harmless error where it did not prejudice his case and where there was other properly admitted inculpatory evidence establishing his guilt in the crimes. In addition to Williams' own admission of guilt following his waiver of his **Miranda** rights, the victim and witness testimony admitted at trial established Williams' involvement in the incident beyond a reasonable doubt. **See Commonwealth v. Fay**, 344 A.2d 473 (Pa. 1975) (failure to suppress statements not reversible error where Commonwealth can establish beyond reasonable doubt error was harmless); **see also Commonwealth v. Baez**, 720 a.2d 711 (Pa. 1998) (same). Thus, we find this claim meritless.

In his next issue, Williams contends that counsel was ineffective for failing to move for a new jury pool where prospective Juror #29 made a statement during jury selection "in [which she] announced to the jury pool that 'she is familiar with the case, because [Williams] is incarcerated where her fiancé works as a prison guard and he comes home and tells her about [Williams'] case." Appellant's Brief, at 28. Williams asserts this statement was prejudicial and "contaminated" the jury pool. **Id.**

"The purpose of *voir dire* is to ensure the empanel[]ing of a fair and impartial jury capable of following the instructions of a trial court. Even exposure to outside information does not ineluctably mean that a jury is unfair

and partial." **Commonwealth v. Tedford**, 960 A.2d 1, 20 (Pa. 2008). Here, the trial judge acknowledges that he took Juror #29 immediately back into his chambers following her statement made in open court during *voir dire*. Her in-court statement consisted of her acknowledging that she heard about Williams from a correctional officer at the prison. N.T. Potential Juror 29 *Voir Dire*, 10/2/13, at 2. While in the judge's chambers, the Honorable Marc F. Lovecchio further discussed the import of the juror's statement, asking the juror exactly from whom she heard about Williams and whether she could be fair and impartial in the instant case. Judge Lovecchio ultimately decided that Juror #29 should be excused from the jury pool; counsel did not object. **Id.** at 3-4. Because the juror's brief statement in front of the jury was not so prejudicial as to render the jury incapable of remaining fair and impartial, we find no merit to this claim. **Tedford**, **supra**.

Williams next contends that counsel was ineffective for failing to question Commonwealth witness, Amy Baird, regarding her bias in favor of the prosecution where she was on probation at the time of the alleged incident, had been granted work release from prison sixteen days before she testified against Williams, and had not been charged with drug possession charges in the instant case.[9]

"[A] witness may be impeached on cross-examination to show the witness' bias, dishonesty, or defects in h[er] ability to observe, remember or

---

[9] Accordingly to President Judge Nancy L. Butts' Pa.R.A.P. 1925(a) opinion, Baird had pled guilty to driving under the influence prior to Williams being charged in this matter. **See** Pa.R.A.P. 1925(a) Opinion, 4/18/19, at 2.

recount the matter about which [s]he has testified." ***Commonwealth v. Gwaltney***, 442 A.2d 236, 241 (Pa. 1982). "[W]henever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against h[er] within the same jurisdiction, that possible bias, in fairness, must be made known to the jury." ***Commonwealth v. Evans***, 512 A.2d 626, 631 (Pa. 1986). Our Court has held that "[a]n order placing a criminal defendant on probation does not constitute a final disposition of a criminal case against him" as probation is a conditional order "placing the defendant under the supervision and control of the court . . . to be followed by a final judgment of discharge [] if the conditions of his probation are complied with [] or by a final judgment of sentence on his being brought before the court following a violation of the terms of his probation[.]" ***Commonwealth v. Buksa***, 655 A.2d 576, 581 (Pa. Super. 1995) (citation omitted).

As Williams points out in his brief, witness Baird had already been convicted and was serving her sentence in Lycoming County at the time she testified against him at trial. Therefore, at the time she testified, Baird did not have "outstanding criminal charges" lodged against her. However, Baird was on work release at the time of trial. While the law clearly designates an order of probation as a "non-final criminal disposition," we have found no authority in this Commonwealth holding the same with regard to work release. We conclude, however, that the two should be treated similarly.

Work release is one of many county sentencing programs available as "Intermediate Punishment" under our Commonwealth's administrative code. *See* Pa. Code § 451.124.[10] In ***Commonwealth v. Melius***, 100 A.3d 682 (Pa. Super. 2014), our Court noted that:

> [T]he intent of the legislature in adopting county intermediate punishment programs was to give trial courts another sentencing option that would lie between probation and incarceration with respect to sentencing severity; to provide a more appropriate form of punishment/treatment for certain types of nonviolent offenders; to make the offender more accountable to the community; and to help reduce the county jail overcrowding problem. **The revocation of a county intermediate punishment sentence is equivalent to the revocation of probation.**

***Id.*** at 685 (citation omitted) (emphasis added). Because a county intermediate punishment such as work release has the same potential to be revoked as a sentence of probation, we hold that an order of work release is a "non-final criminal disposition" for purposes of cross-examining a witness for possible bias. Accordingly, having determined that there was a non-final criminal disposition in Lycoming County against Baird at the time she testified at Williams' trial, it was error for counsel to fail to make the jury aware of any possible prosecution bias she may have had; counsel should have "explore[d] her] motive and potential bias." ***Buska***, 655 A.2d at 581. Despite reaching this conclusion, we recognize that a new trial is only required under the

---

[10] Section 9721 of the Sentencing Code provides trial courts with seven alternative forms of criminal sentences, which include: an order of probation; a determination of guilt without further penalty; partial confinement; total confinement; a fine; county intermediate punishment; and state intermediate punishment. *See* 42 Pa.C.S.A. § 9721(a).

circumstances if the error can be shown to have had an impact on the outcome of Williams' case. *Id.* at 581 (citation omitted); *Ali*, *supra* (to prove ineffectiveness of counsel, appellant must show reasonable probability that outcome of the proceedings would have been different).

Instantly, Baird testified that after she and the victim met at a bar, they went back to her house to complete a marijuana purchase. Baird called an individual named "Rich" to come to her house and he brought three other men with him, one of whom was Williams. While Baird was upstairs in the bathroom, she heard a commotion downstairs. Upon descending the staircase, Baird saw the victim, lying on the floor, being kicked and punched by the four men who were "all huddled around [the victim]." N.T. Trial, 9/24/13, at 102. While Williams was one of the four men present in the home besides Baird and the victim, Baird testified that she never saw Williams throw the initial punch or specifically kick the victim. *Id.* at 104.

In addition to Baird, the victim also testified that Williams struck him in the back of the head, *id.* at 44, and that the perpetrators "proceeded to beat [him] and punch [him] and kick [him] and [break] a bottle upside [his] head." *Id.* During the assault, the victim testified that "they were going through [his] pockets and everything," *id.* at 45, and took his wallet and cell phone. Agent Peacock testified that Williams admitted to him that he had participated in the assault on the victim, in connection with a drug deal, and that he did so to take [drugs] back." *Id.* at 127-29. Williams, however, denied having stolen the victim's wallet or cell phone. *Id.* at 129.

Because Williams, himself, admitted to having assaulted the victim and because Baird testified that she did not see Williams throw the first punch or specifically kick and strike the victim, we do not find that counsel's error had an impact on the outcome of the case. While the jury may have been entitled to know that Baird was on house arrest for an unrelated conviction at the time of Williams' trial, any perceived bias for the prosecution would be unlikely where Baird's own testimony was less damning than the defendant's own admissions. *Evans*, *supra*. Thus, the error was harmless and this claim has no merit.

In his final issue on appeal, Williams contends that counsel was ineffective for failing to challenge, on sufficiency of the evidence grounds, all of his convictions on direct appeal.

On his unsuccessful direct appeal to this Court, appellate counsel challenged the sufficiency of the evidence[11] to support Williams' conviction for robbery, pursuant to section 3701(a)(1)(ii),[12] a first-degree felony. *See Commonwealth v. Williams*, No. 1434 MDA 2014, (Pa. Super. filed March 20, 2015) (unpublished memorandum). Thus, we will confine our review to Williams' remaining convictions – robbery (inflicts bodily injury), theft by unlawful taking and simple assault.

---

[11] Counsel also challenged the weight of the evidence, as an alternative theory, for his section 3701(a)(1)(ii) conviction.

[12] Under section 3701(a)(1)(ii), "[a] person is guilty of robbery if, in the course of committing a theft, he threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S.A. § 3701(a)(1)(ii).

Williams makes a similar argument to the one he made on direct appeal, that the Commonwealth failed to present sufficient evidence to prove that he committed or attempted to commit a theft. Specifically, he claims that "the jury was left to guess which inferences it will adopt" where the victim never testified he saw Williams rifle through his pockets and take his personal belongings or physically assault him save for the first punch. Appellant's Brief, at 10. We disagree.

The victim's testimony bears out that Williams struck the victim in the head and that immediately following that initial punch, the group (including Williams) surrounded the victim and collectively kicked and stomped on him until he fell into a fetal position. While on the ground, some members of the group went through the victim's pockets, while others continued to strike and kick him, ultimately pouring hot cooking oil on him. As our Court determined on direct appeal:

> [The victim's] testimony . . . by itself constituted sufficient evidence to establish that the group committed a theft and that Williams and/or his cohort (with Williams' complicity and general participation) put Stewart in fear of immediate serious bodily injury.[13]

*Id.* at 13. Based on the trial testimony, we agree that a jury could conclude beyond a reasonable doubt that Williams was an active and willing participant

---

[13] Under section 3701(a)(1)(iv), "[a] person is guilty of robbery if, *in the course of committing a theft*, he . . . inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury." 18 Pa.C.S. § 3701(a)(1)(iv) (emphasis added).

in events constituting robbery under section 3701(a)(1)(iv) and theft by unlawful taking.[14]

Finally, Williams, himself, concedes in his appellate brief that he was guilty of simple assault. **See** Appellant's Brief, at 12 ("[t]he first . . . initial punch and kicks . . . constitutes simple assault."); **Id.** at 19 ("Taking an [o]ffense-specific analysis/[f]ocused examination test of this case at hand, no competent judge or jury would have found appellant guilty of anything other than the simple assault."). Thus, we find this issue meritless.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2019

---

[14] "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).