J-S22022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                   :         PENNSYLVANIA
                   :
         v.            :
                   :
                   :
CALVIN LABRON JONES JR.      :
                   :
      Appellant      :   No. 278 MDA 2021

Appeal from the PCRA Order Entered February 17, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000451-2018

BEFORE:    PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:         **FILED:  NOVEMBER 1, 2021**

Calvin Labron Jones Jr. (Appellant) appeals from the order entered February 17, 2021 in the Dauphin County Court of Common Pleas dismissing his initial, timely petition filed under the Post Conviction Relief Act (PCRA).[1] We affirm.

The trial court summarized the factual history as follows:

On the evening of December 8, 2017, Officer Chad McGowan of the Harrisburg Bureau of Police was working as a [s]treet [c]rimes [u]nit [o]fficer with Probation Officer Dan Kinsinger.  They came across an individual by the name of Curtis Hall [("Curtis")] in the 1300 block of Swatara Street, a high crime/drug area of Harrisburg[, Pennsylvania].  Officer McGowan testified that the initial reason why they stopped in that area was because his partner recognized Curtis[, who] was standing next to a silver

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.  The Commonwealth did not file a brief.

minivan. Officer Kinsinger initiated contact with Curtis, who was with his brother Donell Hall [ ("Donell") ] at the time.

Officer McGowan exited his vehicle to assist Officer Kinsinger. As he walked over to the minivan, he observed a male, later identified as [Appellant], sitting in the driver's seat. As Officer McGowan approached, [Appellant] got out of the vehicle and started to walk towards him. According to Officer McGowan, while Curtis and Donell did not appear to be at all affected by the police presence, [Appellant] appeared very nervous, talkative, excited, and looked as though he was trying to distance himself from the [minivan]. [Appellant] asked to talk to [Officer McGowan] in private, away from [Curtis and Donell], and told him that he was actually working undercover for the [Pennsylvania] State Police, and had previously done work for former Chief Deputy District Attorney Johnny Baer. [Appellant] told Officer McGowan that the officers' presence was [interfering with] the undercover operation. It appeared to Officer McGowan that [Appellant] was [attempting to use] various [distraction techniques to avoid inquiry by the officer].

Through the [minivan's] lowered window, Officer McGowan saw an open, partially consumed bottle of brandy on the front passenger seat. He asked for and [received Appellant's identification card] and asked if [Appellant] had anything illegal on his person. [Appellant] said he did not, and then consented to a search of his person. The only thing found by Officer McGowan was a folded stack of lottery tickets. Officer McGowan then asked for permission to search the minivan. [Appellant] said yes, but then told the officer that it was his girlfriend Khailah Layton's vehicle, and he would feel better if they called her first to get her consent. When asked if there were any drugs or firearms inside the [minivan], [Appellant] told Officer McGowan that he believed his girlfriend left a [gun] in the [minivan]. Officer McGowan asked exactly where [the] gun was located, and [Appellant] told him Ms. Layton left the gun inside her purse on the second[-]row bench seat. They made contact with Ms. Layton and received her consent to search the vehicle. During the search of the [minivan], Officer McGowan found the [gun] directly underneath the second[-]row bench seat, within arm's reach of the driver's seat. There was no purse, only the gun. It was a nine-millimeter semi-automatic Smith and Wesson pistol and was fully-loaded, with a round in the chamber. The firearm was registered to Ms. Layton. [Appellant's] explanation for the gun being in the [minivan] was

that he, Ms. Layton, and their children had been grocery shopping and Ms. Layton had left her purse inside the [minivan]. [Appellant] was subsequently arrested by Officer McGowan.

When asked who owned the [minivan], Ms. Layton testified that it was not owned by her; rather, it was a loaner [vehicle] given to her from the dealership after she experienced car trouble. At trial Ms. Layton testified that she, [Appellant], and their daughter had gone grocery shopping on the evening in question, although the statement given to the police that night indicated that [Appellant] had not gone shopping with them. Ms. Layton testified that the gun was in her purse, as she had forgotten to take it out, and when they got to the grocery store[,] she did not want it with her. She claimed to have put it under the [front] passenger seat. Ms. Layton testified that she was carrying a loaded gun because a woman[,] who [Appellant] had a relationship with[,] was stalking and harassing her.

[Appellant] took the stand and first admitted that he had [ ]a prior conviction for false identification to law enforcement. He asserted that he had already been in the process of getting out of the minivan when the officers [arrived on] the evening in question, and [he] had been at that location to speak to Curtis. He testified that he did not know that the firearm was in the [minivan] when he gave Officer McGowan consent to search the [vehicle]. Contrary to Officer McGowan's testimony, he claimed that Officer McGowan never asked if there was anything illegal in the vehicle and that [Appellant] never revealed that he knew there was a gun in the [minivan]. Rather, [Appellant's] testimony was that he called his girlfriend on speaker-phone and told her he was with the police. According to [Appellant], Ms. Layton responded by asking why he [was not] answering his phone, told him she left her firearm in the [minivan], and asked where he was. Officer McGowan was re-called as a witness to clarify that [Appellant] made an admission that there was a firearm inside the vehicle, and was specific about its whereabouts. [Officer McGowan] was given this information prior to searching the [minivan].

Trial Court Opinion, 9/30/19, at 1-4 (record citations and footnote omitted);

see also Pa.R.Crim.P. 907 Notice, 1/22/21, at 2 n.1. Appellant appealed from

his June 17, 2019 judgment of sentence ordering him to serve 50 to 100

months' imprisonment and to pay a $500 fine and costs after a jury convicted Appellant of persons not to possess firearms.[2] This Court affirmed, rejecting Appellant's claims sounding in sufficiency and weight of the evidence. *Commonwealth v. Jones*, 1189 MDA 2019 (unpub. memo.) (Pa. Super. May 22, 2020). No petition for allowance of appeal was docketed.

Appellant filed a *pro se* PCRA petition on August 6, 2020. His petition was filed within one year of his sentence becoming final, and thus it was timely filed per 42 Pa.C.S § 9545(b)(1). The trial court appointed counsel, and on November 10, 2020, counsel filed a letter of no merit pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On January 22, 2021, the trial court issued a notice of its intention to dismiss the petition without a hearing pursuant to Pa.R.A.P. 907. The trial court permitted counsel to withdraw, and on February 17th, entered a final order dismissing Appellant's petition. On February 26th, Appellant filed the present appeal.

Appellant brings the following claims for our review:

I. Whether trial counsel was ineffective for failing to file a motion to suppress any and all evidence obtained from the warrantless search of Appellant's vehicle?

II. Whether trial counsel was ineffective for failing to object to the illegal detention and subsequent search [of Appellant and the vehicle]?

---

[2] 18 Pa.C.S. § 6105(a)(1).

III.   Whether trial counsel was ineffective for failing to interview or call witnesses for trial?

Appellant's Brief at vii (unpaginated).[3]

Appellant's first two ineffectiveness claims relate to suppression.  The trial court analyzed these claims as follows:

> Here, the officer had the requisite reasonable suspicion to detain [Appellant] and request consent to search his minivan when [the officer] spotted an open container of brandy in [Appellant's] vehicle while talking to [Appellant]. [ ] Moreover, during his own testimony, [Appellant] stated that prior to the interaction with the officer, "[W]e was having a drink, that's why I had a bottle, you know, of brandy and just was, you know, feeling good."

Notice Pursuant to Pa.R.Crim.P. 907 of Intention to Dismiss Petition for [PCRA] Relief [(907 Notice)], 1/22/21, at 5.[4]  Our independent review of the record confirms that the investigating officer saw the open bottle of brandy in the minivan prior to asking Appellant for his identification.  *See* N.T. Trial, 4/9-4/11/19, at 75-77 (one volume).  "The officer witnessed [Appellant] commit a summary offense by having an open container of alcohol in his vehicle on a public highway.  *See* 75 Pa.C.S. § 3809(a)."  907 Notice at 5.

---

[3] Although Appellant's brief is unpaginated, his table of contents include page numbers which we use here.

[4] The trial court has submitted a statement referring this Court to its 907 Notice for its reasoning in dismissing Appellant's PCRA petition.  *See* Memorandum Statement in Lieu of Opinion, 4/6/21 (single page) ("We refer the Superior Court to [the 907] Notice.").

When considering an order dismissing a PCRA petition, "[t]he standard of review ... is whether that determination is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Williams***, 220 A.3d 1086, 1090 (Pa. Super. 2019) (citation omitted). There is no absolute right to a PCRA hearing, and we review dismissal without a hearing "to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." ***Commonwealth v. Burton***, 121 A.3d 1063, 1067 (Pa. Super. 2015) (*en banc*). Counsel is presumed to have been effective, and the petitioner must bear the burden of proving ineffectiveness. ***Commonwealth v. Ligons***, 971 A.2d 1125, 1137 (Pa. 2009). To prevail on such a claim, a petitioner must establish that the underlying claim has arguable merit, counsel did not have a reasonable basis for their actions or inaction, and the petitioner suffered prejudice as a result of counsel's deficient performance. ***Id.*** Failure to establish any of the three prongs of this test is fatal to the claim. ***Id.***

Appellant asserts that when he was asked for his identification, "Officer McGowan hadn't observed anything that would have constituted a reasonable suspicion that criminal activity was afoot[,] thereby allowing an investigative detention." Appellant's Brief at 1 (unpaginated). He argues that because he did not receive a citation under 75 Pa.C.S. § 3809(a), his detention was illegal.

- 6 -

*Id.* at 2. However, there is no requirement that the reasonable suspicion supporting an investigative detention result in charges; if there were, perhaps we would call it "suspicion sufficient to charge." "It is clear that a police officer may stop a motor vehicle if he or she reasonably believes that a provision of the Motor Vehicle Code is being or has been violated." **Commonwealth v. DeWitt**, 608 A.2d 1030, 1032 (Pa. 1992) (citations omitted). Our review of both of Appellant's arguments as to ineffectiveness regarding suppression confirms that Appellant is simply mistaken as to the import of the open bottle of brandy that Officer McGowan observed as he was approaching Appellant.

Because the trial court correctly concluded that there is no basis for suppression under the facts as established at trial, we cannot fault it for denying relief based on Appellant's arguments as to ineffectiveness for failing to seek suppression. "The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim." **Commonwealth v. Pierce**, 645 A.2d 189, 194 (Pa. 1994) (citations omitted).[5]

---

[5] The trial court and appointed PCRA counsel both cite **Commonwealth v. Au**, 42 A.3d 1002, 1003 (Pa. 2012), and **Commonwealth v. Lyles**, 97 A.3d 298, 300 (Pa. 2014), and assert that Officer McGowan's request for Appellant's identification "is not to be regarded as escalatory" in evaluating whether Appellant was experiencing a mere encounter or an investigatory detention. *(Footnote Continued Next Page)*

Appellant next argues that counsel was ineffective for failing to call witnesses on his behalf at trial. Appellant's Brief at 13.

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [ineffective assistance of counsel] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Selenski*, 228 A.3d 8, 16 (Pa. Super. Ct. 2020), *appeal denied*, 240 A.3d 462 (Pa. 2020) (citation omitted). PCRA counsel and the trial court both concluded that Appellant failed to establish all five prongs; specifically, he failed to demonstrate how the potential testimony of the witnesses he lists might have been helpful to the defense. 907 Notice at 7-8; No-Merit Letter at 10 (unpaginated). Our review confirms that Appellant's claim is too general to establish prejudice; although he asserts that interviewing the named potential witnesses "would have been able to provide

---

*See* Letter of No Merit, 11/10/20, at 9 (unpaginated; 907 Notice at 6-7. Although Appellant was convicted prior to *Commonwealth v. Cost*, 224 A.3d 641, 642 (Pa. Jan. 22, 2020), *Cost* was available during Appellant's direct appeal, and that language from *Au* and *Lyles* is, at a minimum, good law only inasmuch as it is consistent with *Cost*, which held that an officer's retention of an identification card sufficiently conveys to a reasonable person that they are not free to leave. Repeating such authority of dubious continued strength is unnecessary where, as here, Officer McGowan was justified in initiating an investigative detention by his plain-view observation of the open brandy bottle.

evidence of the event in question." Appellant's Brief at 13.[6] He does not specify any further reason why that formulation of strategy would have benefited the defense, given that the vehicle search was supported both by observation of the brandy bottle and Appellant's permission. Appellant's Brief at 14; 907 Notice at 2 n.1. This claim fails.

Because Appellant's petition is frivolous and he has posited no fact or law that would establish counsel's ineffectiveness or call any aspect of his investigative detention, arrest, and conviction into doubt, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/01/2021

---

[6] Appellant does not explain **how** the listed witnesses, Probation Officer Dan Kinsinger, Deputy Sherrif Edwards, Deputy Sheriff Reid, and Donell Hall, might have been able to provide favorable evidence that might have led to a different outcome. Appellant's Brief at 13. This alone is fatal to his claim.