J-S18017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JESUS MARTINEZ-LOPEZ | : | No. 1540 MDA 2021 |

Appeal from the Order Entered October 26, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002043-2021

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: SEPTEMBER 21, 2022**

The Commonwealth of Pennsylvania appeals the order granting Jesus Martinez-Lopez's motion to suppress. The Commonwealth argues the court erred in concluding the police lacked authority to stop the vehicle Martinez-Lopez was driving and that the police were required to give Martinez-Lopez **Miranda** warnings[1] before questioning him. We reverse and remand.

Following a traffic stop in December 2020, described in greater detail below, the Commonwealth charged Martinez-Lopez with two counts of driving under the influence of a controlled substance ("DUI") and one count of required financial responsibility.[2] Martinez-Lopez filed a pre-trial motion to suppress "all evidence seized from Martinez-Lopez after his illegal detention

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[2] 75 Pa.C.S.A. §§ 3802(d)(1)(i), (d)(2); 1786(f).

and arrest . . . including the observations of the trooper during the interaction, the field sobriety test results, the statements made by Martinez-Lopez, and the blood test results[.]" Omnibus Pre-Trial Motion, 8/10/21, at ¶ 23.

The evidence presented at a hearing on the motion established the following. On December 22, 2020, Pennsylvania State Trooper Nathan Klinger was on patrol on the south side of Reading City. N.T., Pretrial Hearing, 10/15/21, at 7. Trooper Klinger observed the vehicle driven by Martinez-Lopez, a white Ford sedan, and "ran a PennDOT[3] query" on the registration number. *Id.* According to Trooper Klinger,

> our computers are directly linked to JNET.[4] So, basically we have the ability to run any license plate in our vehicle. And we have the ability to run any person as well. So if you gave me a name, date of birth, OLN number, which we do all the time, basically, any applicable tag I see, I basically try to run because you never know. You could get warrants. You can have drivers that are suspended. So any tag that I see, I will attempt to run that registration plate to see who is driving the vehicle and if anything is wrong with the vehicle and/or warrants.

*Id.* at 8.

Trooper Klinger followed the vehicle for approximately four blocks, during which he did not observe any moving or traffic violations. *Id.* at 17. The PennDOT report gave Trooper Klinger the name of the registered owner, the make and model of the vehicle, and the title number, tag number, and

---

[3] Referring to the Pennsylvania Department of Transportation.

[4] Referring to the Pennsylvania Justice Network.

VIN. ***Id.*** at 10; Commonwealth's Ex. 1 at 1. The owner of the vehicle was listed as Karen Villavicencio. N.T. at 20.

The report also informed Trooper Klinger that the vehicle's registration was suspended, effective September 30, 2020, due to a lack of insurance, in violation of Section 1786(f) of the Pennsylvania Vehicle Code. ***Id.*** at 7, 9, 10; 75 Pa.C.S.A. § 1786(f). Trooper Klinger testified that the PennDOT records accessible to the police are generally correct and reliable. ***Id.*** at 28-29.

Trooper Klinger stopped the vehicle. ***Id.*** at 12. Trooper Klinger did not testify whether he discerned the sex of the driver prior to initiating the stop. Martinez-Lopez was driving, and there was a second person in the passenger seat. ***Id.*** Martinez-Lopez rolled down the window, and Trooper Klinger could smell a strong odor of burnt marijuana emanating from inside the vehicle. ***Id.*** at 12, 13. He asked Martinez-Lopez to present his license, registration, and proof of insurance. ***Id.*** at 12. Martinez-Lopez responded that he did not have a license or insurance. ***Id.*** at 12, 13. He presented Officer Klinger with an ID card. ***Id.*** at 12.

Trooper Klinger then asked Martinez-Lopez about the odor of marijuana, and whether he had a medical marijuana card. ***Id.*** at 14. Trooper Klinger acknowledged that Martinez-Lopez was not free to drive away during the questioning, and that he did not read Martinez-Lopez the ***Miranda*** warnings. ***Id.*** at 26. Martinez-Lopez responded that he did not have a medical card, and that he had smoked marijuana approximately an hour before driving. ***Id.*** at

- 3 -

14. Trooper Klinger noticed that Martinez-Lopez's eyes were bloodshot. *Id.* at 25.

Trooper Klinger called for backup. *Id.* at 14. Once other officers arrived, Trooper Klinger had Martinez-Lopez perform field sobriety tests. *Id.* at 14-15. After the tests, Trooper Klinger handcuffed Martinez-Lopez, put him in the police car, and took him to a hospital, where he submitted to a blood draw. *Id.* at 15.

The vehicle's owner, Villavicencio, testified for the defense. She stated she never allowed her insurance to lapse for more than "a couple of days or so," and that she had paid her premium and reinstated her policy prior to the date of the traffic stop.[5] *Id.* at 33. She admitted that she had continued to drive her car while it was uninsured and testified that she had given Martinez-Lopez permission to drive it. *Id.* at 34, 36. She stated that she had received notification from PennDOT that her insurance had lapsed, but not that her registration had been suspended. *Id.* at 30, 33, 34. Villavicencio testified that she was unaware that she was required to report to PennDOT when her insurance had been reinstated. *Id.* at 35.

The trial court granted the motion. The court held Trooper Klinger had lacked authority to legally stop the vehicle for two reasons. First, the financial responsibility statute, which provided the basis for the stop, criminalizes the

---

[5] Martinez-Lopez introduced a reinstatement notice for the vehicle, generated by Villavicencio's insurance company, which stated the insurance policy had been canceled on November 12, 2020, due to lack of payment, and reinstated on December 12, 2020. N.T. at 20-21.

conduct of the owner of the vehicle, and before he stopped the vehicle, Trooper Klinger could have observed that the registered owner was female and the driver was male. Second, the information in the PennDOT system regarding the insurance status of the vehicle was incorrect, and the Pennsylvania constitution does not incorporate a "good faith" exception to the exclusionary rule. Trial Court Opinion, filed 1/6/22, at 3-4.

In addition, the court determined that Trooper Klinger had illegally questioned Martinez-Lopez, because he had stopped Martinez-Lopez for a traffic violation, Martinez-Lopez was not free to leave, and Trooper Klinger had questioned him about the smell of marijuana without reading him **Miranda** warnings. **Id.** at 5. The court concluded that the inculpatory statements, field sobriety tests, and results of the blood draw must be suppressed as the products of an illegal stop and custodial interrogation. **Id.**

The Commonwealth appealed,[6] and presents the following issues:

A. DID POLICE HAVE REASONABLE SUSPICION AND/OR PROBABLE CAUSE TO BELIEVE THAT MARTINEZ-LOPEZ OPERATED A MOTOR VEHICLE WITHOUT THE REQUISITE INSURANCE COVERAGE, IN VIOLATION OF 75 Pa. C.S.A. § 1786(f)?

B. DID THE TRIAL COURT RESPECTFULLY ERR IN SUPPRESSING STATEMENTS MADE DURING A LAWFUL TRAFFIC STOP SUPPORTED BY REASONABLE SUSPICION AND/OR PROBABLE CAUSE, AS MARTINEZ-LOPEZ WAS NOT IN CUSTODY WHEN THE STATEMENTS WERE MADE?

_____

[6] The Commonwealth's notice of appeal included a certification "that the ruling terminated or substantially handicaps the prosecution of [the] case." Notice of Appeal, 12/2/21; Pa.R.A.P. 311.

Commonwealth's Brief at 4 (answers below omitted).

The Commonwealth argues Trooper Klinger had reasonable suspicion and/or probable cause to stop the vehicle for violating Section 1786(f) of the Vehicle Code. It points out that we have previously held that National Crime Information Center ("NCIC") records can provide a basis for probable cause to believe a defendant is driving a motor vehicle without the requisite financial responsibility. Commonwealth's Br. at 13 (citing **Commonwealth v. Bolton**, 831 A.2d 734, 737 (Pa.Super. 2003)). The Commonwealth stresses that although Villavicencio's insurance had been reinstated before the stop, she admitted that she did not notify PennDOT when her insurance was reinstated, **see** 75 Pa.C.S.A. § 1786(e)(1), such that "the information contained in the PennDOT database complied with the law." **Id.** at 15.

The Commonwealth also argues Trooper Klinger was not required to **Mirandize** Martinez-Lopez because "Pennsylvania jurisprudence has never equated a traffic stop with a custodial arrest absent additional, objective factors" lacking in this case. The Commonwealth notes, for example, Martinez-Lopez "was not forced into a patrol car, transported from the scene or physically restrained." **Id.** at 17, 19. The Commonwealth thus contends the court erred in suppressing any evidence.

We review the grant of a motion to suppress to determine "whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." **Commonwealth v. Dix**, 207 A.3d 383, 387 (Pa.Super. 2019) (quoting

*Commonwealth v. Griffin*, 24 A.3d 1037, 1041 (Pa.Super. 2011)). "[W]e consider only the evidence of the defendant's witnesses and so much of the prosecution's evidence that remains uncontradicted when fairly read in the context of the record as a whole." *In re V.H.*, 788 A.2d 976, 978 (Pa.Super. 2001). We employ a *de novo* standard of review to questions of law. *Commonwealth v. Shaffer*, 209 A.3d 957, 969 (Pa. 2019).

Trooper Klinger stopped the vehicle Martinez-Lopez was driving because the PennDOT records showed the vehicle's registration was suspended due to a lack of insurance, in violation of Section 1786(f) of the Vehicle Code. That provision states,

> **(f) Operation of a motor vehicle without required financial responsibility.**--Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle or permit it to be operated upon a highway of this Commonwealth without the financial responsibility required by this chapter. In addition to the penalties provided by subsection (d), any person who fails to comply with this subsection commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $300.

75 Pa.C.S.A. § 1786(f).

Subsection 1786(a) requires every registered vehicle to be insured to compensate victims in the event of an accident. *Id.* at § 1786(a). Vehicles' owners are deemed to have consented to provide proof of insurance to the police upon request, and if a vehicle's insurance has lapsed, the owner may not operate it or allow it to be operated until both the insurance has been reinstated and poof of reinstatement has been provided to PennDOT. *Id.* at

- 7 -

§§ 1786(c), (e)(1). If PennDOT discovers an insurance lapse, it will suspend the vehicle's registration for three months and until a fee is paid. *Id.* at §§ 1786(d)(1), (d)(2).[7] If it determines the registered owner has permitted the operation of the vehicle while uninsured, it will suspend the operating privilege of the owner for three months and impose a fee. *Id.* at § 1786(d)(1).

A police officer may stop a vehicle to check a vehicle's proof of financial responsibility, if the officer has reasonable suspicion:

> **(b) Authority of police officer.**--Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).[8] Reasonable suspicion is defined as follows.

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in

---

[7] PennDOT may waive the fee if the owner proves the lapse was for less than 31 days and the owner did not permit operation of the vehicle during the period of lapse. 75 Pa.C.S.A. § 1786(d)(2)(i).

[8] Prior to its amendment in 2004, the statute required that an officer have "articulable and reasonable grounds" to suspect a violation, which the Pennsylvania Supreme Court interpreted as requiring probable cause. *See* ***Commonwealth v. Feczko***, 10 A.3d 1285, 1287-88 (Pa.Super. 2010) (*en banc*). The lower standard embraced by the current version brings Pennsylvania in line with constitutional protections. ***Id.***; ***see also*** ***Commonwealth v. Sands***, 887 A.2d 261, 268 (Pa.Super. 2005)

that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Chambers***, 55 A.3d 1208, 1215 (Pa.Super. 2012) (quoting ***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super.2005)) (alteration in original).

However, a traffic stop based on reasonable suspicion of a Vehicle Code violation "must 'serve an investigatory purpose relevant to the suspected violation.'" ***Commonwealth v. Ruffin***, No. 1913 EDA 2021, 2022 PA Super 146, at *2 (Aug. 23, 2022) (quoting ***Feczko***, 10 A.3d at 1291). If the suspected violation is one that requires no additional investigation, the officer must have probable cause. ***Id.*** Police may rely on the records returned from a database search to perform a vehicle stop for a Section 1786(f) violation. ***See Bolton***, 831 A.2d at 736-37.[9]

Here, the trial court concluded Trooper Klinger lacked authority for the stop, for two reasons. The trial court first observed that Section 1786(f) criminalizes conduct by the registered owner of the vehicle, and Trooper Klinger could have observed that the registered owner of the vehicle—Villavicencio—was female, and the driver—Martinez-Lopez—was male. Trial

---

[9] ***Bolton*** was decided when probable cause was required to justify a traffic stop and held that NCIC records can provide probable cause. ***See*** above, note 8.

- 9 -

Ct. Op. at 3, 4. The trial court relied on the following passage from **Kansas v. Glover**, 140 S.Ct. 1183 (2020):

> the presence of additional facts might dispel reasonable suspicion. For example, if an officer knows that the registered owner of the vehicle is in his mid-sixties but observes that the driver is in her mid-twenties, then the totality of the circumstances would not raise a suspicion that the particular individual being stopped is engaged in wrongdoing.

**Glover**, 140 S.Ct. at 1191 (quotation marks and citations omitted).

In **Glover**, the police discovered that the owner of a vehicle had a revoked driver's license and initiated a vehicle stop on that basis. **See Commonwealth v. Jefferson**, 256 A.3d 1242, 1249 (Pa.Super.) (*en banc*), *appeal denied*, 268 A.3d 1071 (Pa. 2021). Glover was the owner of the vehicle and argued the police did not possess reasonable suspicion to believe that he was the person driving the vehicle at the time of the stop. **Id.** The United States Supreme Court rejected this argument and held that "when the officer lacks information negating an inference that the owner is the driver of the vehicle, the stop is reasonable." **Glover**, 140 S.Ct. at 1186. Thus, **Glover** "clearly dictates" that the owner/driver inference provides reasonable suspicion to support a stop, assuming "that the police have reason to believe that the registered owner is involved in criminal conduct" and "[lack]

information negating [the] inference that the owner is the driver of the vehicle." *Jefferson*, 256 A.3d at 1249-50.[10]

*Glover* is inapplicable in this case, because the suspected offense, under Section 1786(f), not only prohibits the registered owner from driving the vehicle during an insurance lapse, but also prohibits the owner from allowing someone else to drive it. 75 Pa.C.S.A. § 1786(f). Even an equitable owner of a vehicle may be held liable for violating Section 1786(f). *See Habbyshaw v. Com., Dep't of Transp., Bureau of Driver Licensing*, 683 A.2d 1281, 1284 (Pa.Cmwlth. 1996).[11] Therefore, even though Trooper Glover may have observed that the driver was male before making the stop, this fact would not have negated his reasonable belief, based on the PennDOT inquiry, that a violation of the statute was taking place.

Second, the trial court held the stop was unlawful because the defense presented persuasive evidence at the suppression hearing that Villavicencio had reinstated the vehicle's insurance prior to the stop. According to the trial court, this vitiated Trooper Klinger's reliance upon the PennDOT record because Pennsylvania does not allow for "a 'good faith' exception to the

---

[10] In *Commonwealth v. Jefferson*, we further held it reasonable to assume the registered owner could be found in her vehicle, even if she is not the person driving it. *Jefferson*, 256 A.3d at 1250, 1250 n.6.

[11] We may rely on decisions of the Commonwealth Court for their persuasive value. *Commonwealth v. Fitzpatrick*, 159 A.3d 562, 571 n.7 (Pa.Super. 2017).

exclusionary rule." Trial Ct. Op. at 4 (citing **Commonwealth v. Johnson**, 86 A.3d 182 (Pa. 2014)).

In other jurisdictions, the "good faith exception" permits the admission of evidence gained following the execution of a warrant lacking in probable cause when the officers executing the warrant relied in good faith on its issuance by a magistrate. **Commonwealth v. Edmunds**, 586 A.2d 887, 905-06 (Pa. 1991). Pennsylvania does not allow the exception, because the exclusionary rule under the Commonwealth's constitution acts not only as a deterrent, but to vindicate an individual's right to privacy. **Id.** at 901; **see Johnson**, 86 A.3d at 188. Our Supreme Court has applied this principle in holding that evidence is inadmissible when obtained after police officers, in good faith, execute a warrant that has expired but not been purged from the police's record system. **Johnson**, 86 A.3d at 187. Application of the exclusionary rule in this scenario not only serves a "privacy-based function," but also acts as a deterrent to "encourage the executive to adopt more efficient measures to purge executed arrest warrants[.]" **Id.** at 190.

Pennsylvania's rejection of the good faith exception to the warrant requirement has no bearing here. Trooper Klinger was not executing a warrant. Rather, he was acting upon information in records maintained by a third party—PennDOT—that gave him reasonable suspicion that the vehicle lacked insurance and had a suspended registration. Trooper Klinger had statutory authority to stop the vehicle to investigate these violations. **See** 75 Pa.C.S.A. § 6308(b).

Furthermore, while the trial court was convinced that Villavicencio had reinstated her insurance policy before the stop, the defense presented no evidence regarding whether the vehicle's registration was still suspended on the date of the stop. *See* 75 Pa.C.S.A. § 1786(d)(1). Villavicencio also testified she had not notified PennDOT after she reinstated her policy, in violation of Section 1786(e)(1). *See* 75 Pa.C.S.A. § 1786(e). Therefore, the fact that Villavicencio had reinstated her insurance prior to the stop does not require suppression of the evidence.

The court next held that Martinez-Lopez's statement that he had smoked marijuana an hour before driving was suppressible because Trooper Klinger did not read Martinez-Lopez his *Miranda* rights before asking him about the odor of marijuana and whether he had a medical marijuana card. The court found the exchange was a custodial interrogation because Martinez-Lopez had not been free to leave, and the questions had been intended to elicit incriminating responses. Trial Ct. Op. at 5 (citing *Commonwealth v. Williams*, 220 A.3d 1086 (Pa.Super. 2019) and *Commonwealth v. Graul*, 912 A.2d 252, 255 (Pa. 2006)). The court also found the questioning improper because Trooper Klinger had pulled Martinez-Lopez over for a traffic violation, and not suspicion of DUI. *See* Findings of Fact and Conclusions of Law, 10/26/21, at 5-6.

"The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention . . . ; and (3) a custodial detention." *Dix*, 207 A.3d at 388 (quoting

***Commonwealth v. Mackey***, 177 A.3d 221, 227 (Pa.Super. 2017) (footnote omitted)). The levels involve an increasing level of restraint by the police and therefore require escalating levels of suspicion of criminal activity:

> A mere encounter can be any formal or informal interaction between an officer and a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond. A mere encounter does not need to be justified by any level of police suspicion.
>
> An investigative detention carries an official compulsion to stop and respond. Because an investigative detention has elements of official compulsion it requires reasonable suspicion of unlawful activity. . . .
>
> A custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. A custodial detention requires that the police have probable cause to believe that the person so detained has committed or is committing a crime.

***Id.*** (quotation marks, ellipses, brackets, and citations omitted). ***Miranda*** warnings are required whenever the police interrogate a suspect who is in custody. ***Williams***, 220 A.3d at 1091.

"The usual traffic stop constitutes an investigative rather than a custodial detention, unless, under the totality of the circumstances, the conditions and duration of the detention become the functional equivalent of arrest." ***Commonwealth v. Mannion***, 725 A.2d 196, 202 (Pa.Super. 1999) (*en banc*). Coercive conditions, such as where a suspect is forced into a patrol car, may transform an ordinary traffic stop into custodial interrogation. ***Id.*** To determine whether the conditions of the detention are the functional

equivalent of an arrest, the court considers, "the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions." *Id.* at 200.

"Authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Commonwealth v. Malloy*, 257 A.3d 142, 149 (Pa.Super. 2021) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). However, new information obtained during the natural course of the stop can provide a basis to extend the stop or escalate the encounter. *Commonwealth v. Chase*, 960 A.2d 108, 115 n.5 (Pa. 2008); *accord Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa.Super. 2019).

Trooper Klinger stopped the vehicle Martinez-Lopez was driving on suspicion of suspended registration for failure to maintain insurance. Martinez-Lopez remained in the driver's seat while Trooper Klinger asked him questions directed to that offense. During the interaction, Trooper Klinger smelled burnt marijuana emanating from the vehicle. Trooper Klinger then asked Martinez-Lopez questions aimed at investigating a DUI offense. Martinez-Lopez remained seated in his vehicle.

This was not the functional equivalent of an arrest. Trooper Klinger therefore did not need to read *Miranda* warnings before asking Martinez-Lopez questions related to his use of marijuana. This was an investigatory

detention, and it was supported by reasonable suspicion that Martinez-Lopez had been driving under the influence of a controlled substance. *See* ***Commonwealth v. Cauley***, 10 A.3d 321, 327 (Pa.Super. 2010) (finding mere encounter transformed into an investigative detention when officer asked appellant to perform field sobriety tests; investigative detention was supported by reasonable suspicion because officer had noticed the odor of alcohol on appellant's breath, his bloodshot eyes, and his slurred speech); ***Commonwealth v. Sierra***, 723 A.2d 644, 646 (Pa. 1999) (holding officer's continued questioning of driver after issuing traffic citation was an investigative detention).

Furthermore, Trooper Klinger did not unconstitutionally prolong the investigation into the traffic offense. He testified that he detected the smell of marijuana immediately. *See **Commonwealth v. Rogers***, 849 A.2d 1185, 1189-90 (Pa. 2004) (rejecting appellant's argument that officer should have ceased traffic stop after issuing citations, as officer had gained reasonable suspicion to extend the stop). We reverse the order granting Martinez-Lopez's motion to suppress and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/21/2022